**STATE of Missouri, Respondent,**

v.

**Michael KEMPKER, Appellant.**

No. 74009.

Supreme Court of Missouri,
En Banc.

Feb. 25, 1992.

Stephen J. Harris, Columbia, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Judge.

The defendant was convicted of two counts of passing bad checks in violation of *§ 570.120, RSMo 1986.* The Court of Appeals, Western District, reversed and remanded for new trial concluding that the state had failed to counter the defendant's properly raised claims of violation of the doctrine of *Powers v. Ohio,* — U.S. —, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), in the exclusion of African–American jurors. We granted transfer because of the importance of issues touching *Powers* and *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We conclude that the trial court committed no error and affirm.

### 1. The Batson–Powers Issue

Of the 24 jurors from which the final selections were made, three were African–American. The state removed two of these jurors by exercise of its peremptory challenges; the third served on the jury. After the peremptory challenges were announced, the defendant properly objected to the state's striking of the African–American jurors. In so doing the defendant correctly anticipated the *Powers* ruling, in that the defendant was not African–American, and it had been previously assumed that *Batson* applied only when the defendant and the excluded jurors were of the same race. The trial judge took the commendable precaution of holding a *Batson*-type hearing in response to the challenge. The state went forward with justification for its strikes, and so we do not have to struggle with the question of what constitutes a prima facie case. *See Hernandez v. New York,* — U.S. —, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987).

The state struck jurors Raye and Rostic, who were both African–American. The prosecutor indicated three characteristics he considered undesirable for jurors in the case: youth, a history of writing insufficient funds checks, and lack of business experience. Raye was the youngest person in the array and had written insufficient funds checks. Rostic was the fifth youngest, had written bad checks, and lacked business experience. Salmons, an African–American juror whom the state did not strike, ranged between Raye and Rostic in age and had written insufficient funds checks, but this took place several years earlier when she was in college. Three Caucasian jurors had written insufficient funds checks but one of these, who was slightly older than Rostic, was engaged in business, and the other two were substantially older. Two Caucasian jurors who were younger than Rostic were not struck, but neither had written insufficient funds checks.

■ The trial judge found that the history of insufficient funds checks demonstrated a racially neutral reason for the strikes and concluded that no general purpose of excluding African–American jurors had been demonstrated. He observed that one African–American juror remained even though the defendant had four remaining strikes after excusing Raye and Rostic. The defendant, to succeed, must demonstrate that this finding is clearly erroneous. We are not persuaded that he has done so.

The factors the prosecutor indicated are objective and racially neutral. The defendant asserts that a finding of discrimination is compelled because other jurors who had written insufficient funds checks were not removed, and two jurors who were younger than Rostic were not struck. It is suggested that the reasons given were necessarily pretextual because they were not applied uniformly to all members of the panel. But the struck African–American jurors possessed two of the characteristics the prosecutor sought to avoid, and no re-

maining juror had both of these. The record amply supports the trial judge's conclusion.

 We express a word of caution. *Batson* and *Powers* present substantial problems for prosecutors in requiring explanation of tactical decisions for which reasons have not traditionally been required. Prosecutors may still use horse sense and play hunches, so long as the factors they rely on are racially neutral. *Antwine*, 743 S.W.2d 51, 67. But the prosecutor must be prepared to offer justification if questioned, and objective factors are the most persuasive. Although *Batson–Powers* obliges the trial judge to assess the prosecution's credibility, it is not sufficient to argue that affirmance must follow because the trial judge apparently considered the prosecutor credible. There is little support in a bare intimation that "there was ... something about [the juror's] appearance today ..." that the prosecutor did not like. This prosecutor's objective standards, as expressed in this record, are a model.

### 2. Closing Argument

The defendant also argues that the trial court should have intervened sua sponte when the prosecutor in closing argument improperly commented on the defendant's failure to testify as to his intentions. The portion most strongly complained about is as follows:

> The one thing that you haven't seen someone get on the stand and testify about is exactly what this Michael Kempker had in his mind ...

The state suggests that this is not a direct comment on the defendant's failure to take the stand. We do not agree. "Get up on the stand and testify" is very clear. It is hard to imagine how any person other than the defendant could testify as to his state of mind. The prosecutor took a substantial risk in making this argument.

We conclude, nonetheless, that the absence of an objection is fatal to the defendant's contention. Had objection been made the trial judge could have taken appropriate steps to make correction. The defendant was not necessarily entitled to a mistrial. The judge could consider the state of the evidence and the apparent effect on the jury and might conclude that it would be sufficient to sustain the objection and then caution the jury if requested. Defense counsel did not give him this chance.

In *State v. Clemmons*, 753 S.W.2d 901 (Mo. banc 1988), we pointed out that plain error will seldom be found in unobjected closing argument. A holding that would require the judge to interrupt counsel presents myriad problems.

Counsel for the defendant questioned the jurors as to whether any of them would draw adverse inferences if the defendant did not testify. The jury, at the defendant's request, was instructed in accordance with MAI–CR 3d 308.14, which makes it clear that no presumption of guilt arises and no adverse inference may be drawn if the defendant does not take the stand. If counsel wanted relief from the objectionable argument, an objection should have been made.

The judgment is affirmed.

All concur.