STATE of Missouri, Respondent,

v.

Terrence METTS, Appellant.

No. 59374.

Missouri Court of Appeals,
Eastern District,
Division One.

March 24, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
April 22, 1992.

Application to Transfer Denied
June 2, 1992.

David C. Hemingway, Ellen A. Blau, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Terrence Metts, appeals from his jury trial conviction in the Circuit Court of the City of St. Louis of one count of stealing over $150.00, RSMo § 570.030 (1986), for which he was sentenced, as a prior and persistent offender, to five years' imprisonment. We affirm.

At approximately 2:30 p.m., on the afternoon of January 13, 1990, George Pritzker, a security officer employed by the Famous Barr Store in downtown St. Louis, observed two men leaving the stockroom on the fourth floor. Mr. Pritzker testified that he did not recognize either gentleman as being a Famous Barr employee, and each man was carrying a shopping bag.

When Mr. Pritzker approached the two men, later identified as the appellant and William Douglas, the two men turned their backs to Mr. Pritzker and threw their bags into the corner. The two men then unsuccessfully attempted to flee. After handcuffing the two men, Mr. Pritzker looked into the bags they had been carrying and

found one jacket in appellant's bag and six jackets in Mr. Douglas's bag. There were no receipts in either bag or among the personal belongings of the two men. Patricia Fowler, an assistant buyer for Famous Barr, testified that the value of the seven jackets totalled approximately $728.00.

Appellant was indicted on a charge of stealing over $150.00 on February 8, 1990. A trial was held on the charge from September 24, 1990, until September 26, 1990. On September 26, 1990, the jury returned its verdict finding defendant guilty as charged. On November 19, 1990, appellant was sentenced, as a prior and persistent offender, to five years' imprisonment. This court issued its opinion affirming appellant's conviction on December 17, 1991. On February 25, 1992, the Missouri Supreme Court accepted transfer of appellant's case and then retransferred the case to this court for "reconsideration in light of *State of Missouri v. Michael Kempker,* 824 S.W.2d 909 (Banc 1992)."

Appellant first contends that the trial court erred in denying his *Batson* motion because the State used five of its six peremptory strikes to remove blacks from the venire, and the reasons offered for striking the jurors were not supported by the record. We disagree.

The record does not indicate the initial racial composition of the venire panel. It is clear, however, that the State used five of its six allocated peremptory strikes to remove blacks from the venire panel. After strikes were made, the panel consisted of eight blacks and four whites.

Following the State's strikes, appellant moved to quash the State's strikes pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). After noting that the final jury had eight blacks on it, the State articulated its reasons for making its strikes.

The State struck Mr. Shelton because the State felt he would not give the State a fair trial because he indicated that he was strongly leaning toward [having] more than one witness. Also the State noticed that Derrell Harris was sleeping on occasion, first page, and that if Mr. Harris was so selected to stay on the jury, he would not provide either the State or the defendant with a fair trial because he would not maintain adequate attention to the facts of the case.

Let the record reflect that the State has struck Karen McNulty for the same reason. She indicated a strong preference to have more than one witness if the State only brought one witness, she wouldn't be fair and impartial. Mr. Reed along with Mr. David Collins, and finally on page five with Henry Lee Stephens. The State observed him many of times on occasion appeared—Mr. Stephens being the age of 65, was somewhat sleeping or incoherent to the questions being asked. He was not really that responsive to the State's questions.

The State in total had seven strikes including the alternate. The State struck five blacks for those reasons as well as two whites for similar of [sic] the same reasons. That the State is also represented by counsel which is belonging to the same race as the defendant, and it's not the State's intention to use the strikes in a discriminatory manner. Also, your Honor, the State, however, will not oppose the Batson challenge and ask also to not concede the Batson challenge, but ask the Court to quash the panel and send over for a new panel.

Appellant's attorney then noted that she had not noticed Mr. Harris or Mr. Stephen sleeping and further indicated that the State had not pointed out the matter to the court's attention. Appellant's attorney made no comments relating to the other three strikes. The court then made its findings:

THE COURT: Let me comment briefly on each of the individuals that were mentioned before I rule. Mr. Shelton, number 468, my notes indicate that he was very insistent on wanting more than one eye-witness, that would affect his judgment, although I did find he has been rehabilitated in questioning. He would be a reasonable choice to strike.

As for McNulty, she indicated she needed more than one eye-witness. She would like to have more than one eye-witness. And the same for Mr. Collins, a

victim of a car theft, bikes have been stolen. Indicated he would need more than one eye-witness.

As to Mr. Harris and Mr. Stephens, voluntary sleeping and being incoherent, I have no notes on that and did not personally observe it. In any case, I don't see any racially discriminatory manner in which the strikes were made in. The motion to quash the strikes, denied. As to the State's motion to quash the panel is also denied.

On appeal, appellant contends there was no evidence to strike Venirepersons Harris, Stephens or Collins.

■ Appellant first claims the reason given for the exclusion of Venireperson Collins, "Mr. Reed along with Mr. David Collins," is unsupported by the record. While we agree that the reason, taken out of context, does not support the exclusion of Venireperson Collins, we disagree with appellant's claim that the State's reason was pretextual.

The record indicates that Venireperson Collins was quite adamant about wanting more than one witness to appellant's crime. The State even attempted to have Venireperson Collins struck for cause due to his indicating "unquestionably he would require more than one witness." While the reason given for excluding Venireperson Collins may have grouped him with Venireperson Reed, rather than with Venirepersons McNulty and Shelton, the trial court did not believe the reason expressed by the State was what the State had intended to say. More importantly, the lack of objection to the reason from appellant indicates that appellant also knew what the State meant to say and was satisfied with the reason given. *State v. Jackson*, 809 S.W.2d 77, 81 (Mo.App., E.D.1991). We will not take the State's reason to be pretextual where it is clear, as it is here, that the State merely misspoke and appellant did not object.

■ Appellant next challenges the reasons given for the removal of Venirepersons Harris and Stephens. While we believe inattentiveness is a valid, racially neutral reason for exercising peremptory challenges, we agree with our brethren on the Eighth Circuit that this reason poses several problems:

> We are, however, concerned about the generality of such an explanation as inattentiveness for the striking of venire members. Determining who is and is not attentive requires subjective judgments that are particularly susceptible to the kind of abuse prohibited by *Batson*. There is the additional problem that judging attentiveness requires observations of demeanor that will often not be reflected by the written record. This difficulty is compounded by the need to compare the attentiveness of the challenged venire members with those who were not challenged.

> These factors make the district court's observations particularly crucial. We believe a prosecutor's explanation of challenges on the grounds of inattentiveness deserves careful scrutiny by the district court, and special care by counsel to fully develop the record concerning the specific behavior by venire members motivating counsel to make a peremptory challenge based on inattentiveness.

*U.S. v. Sherrills*, 929 F.2d 393, 395 (8th Cir.1991).

We believe there is sufficient evidence in the present case to affirm the judgment of the circuit court. This is based largely on the deference given to the trial court, which had an opportunity to observe the State's attorney and determine his credibility. While we note that the Supreme Court of this State has held that "It is not sufficient to argue that affirmance must follow because the trial court apparently considered the prosecutor credible," *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992), we believe the trial court's ability to assess the credibility of the prosecutor still plays a major role in determining the validity of a *Batson* challenge. This is particularly true where a strike is made due to a prosecutor's "horse sense" and hunches that the Missouri Supreme Court in *Kempker* claimed are still permissible. *Kempker*, at 911. As the United States Supreme Court noted in *Hernandez v. New*

*York,* —— U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), "[i]n the typical peremptory challenge inquiry, the *decisive* question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. *There will seldom be much evidence bearing on that issue,* and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." *Hernandez,* 111 S.Ct. at 1869 (emphasis added). We agree with the Missouri Supreme Court's conclusion in *Kempker* that the trial court's assessment of credibility should not be the sole factor considered in reviewing a *Batson* case. Often the record will aid a court in reviewing a *Batson* claim or the surrounding circumstances will point to a lack of discrimination. We believe the record in this case is sufficient to support the trial court's action. The transcript of the voir dire recorded few responses from Venirepersons Stephens and Harris and, invariably, these comments were directly prompted by State questions. In addition, we find some of Venireperson Stephens' answers support the State's contention that he was somewhat incoherent at times. We, therefore, do not find the trial court's denial of appellant's *Batson* motion was clearly erroneous.

We note, however, that in future cases, the State should inform the court of any perceived "inattentiveness" on the part of a venire member. In this way, a more complete record will be presented to the reviewing court. An attorney who fails to call the court's attention to such inattentiveness should be fully prepared to have a strike due to inattentiveness disallowed.

Appellant next contends that the trial court erred in permitting Mr. Pritzker to testify that he observed appellant and Mr. Douglas talking to each other after the court had ruled that statements made by appellant and Mr. Douglas had not been properly disclosed as required under Rule 25.03. We disagree.

On February 13, 1990, appellant sent the State a written request for discovery, including a request for any statements made by appellant or Mr. Douglas. Although Mr. Pritzker was listed as a witness by the State, no statements by appellant or Mr. Douglas to Mr. Pritzker were included in the discovery. Apparently, the State was informed on the day before trial that Mr. Pritzker had heard one of the two men say "Oh, he got us" when they were apprehended. The State failed to inform the defendant of this statement, however, until the morning of trial. Due to the failure of the State to provide proper discovery, the trial court excluded the statements from trial, but allowed Mr. Pritzker to testify that he saw the appellant's and Mr. Douglas's "mouths moving" when he approached them. Appellant contends that the trial court erred in permitting Mr. Pritzker to testify that the appellant and Mr. Douglas were conversing because of the violation of Rule 25.03.[1]

The question of the remedy for violation of the discovery rules lies within the sound discretion of the trial court. *State v. Kilgore,* 771 S.W.2d 57, 66 (Mo. banc 1989). The trial court's denial of a requested sanction is an abuse of discretion only where the admission of evidence results in fundamental unfairness to the defendant. *Id.* "The notion of fundamental unfairness in turn is to be measured by whether the evidence or the discovery

1. Rule 25.03 provides, in relevant part: Except as otherwise provided in these Rules as to protective orders, the state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request:

\* \* \* \* \* \*

(2) Any written or recorded statements and the substance of any oral statements made by the

defendant or by a co-defendant, a list of all witnesses to the making, and a list of all witnesses to the acknowledgement, of such statements, and the last known addresses of such witnesses.

thereof would have affected the result of the trial." *Id.* Thus, it is not whether the evidence presented prejudiced the defendant, but whether the *failure to disclose* the evidence affected the result by unduly hindering the defendant's ability to meet the evidence. *Id.*

In the present case, the trial court did prohibit the State from using the statements made by appellant and Mr. Douglas. The court only allowed the State to use the fact that the mouths of the two men were moving when they were approached. Appellant has not provided this court with any argument as to how this evidence could have been better met had it been disclosed at an earlier time. Instead, appellant has relied solely on the prejudicial nature of the evidence itself. If the additional time to prepare to meet the evidence afforded by discovery could not have aided appellant, then no fundamental unfairness occurs. *Kilgore,* 771 S.W.2d at 67. No reversible error, therefore, occurred.

Affirmed.

REINHARD, P.J., and CRANE, J., concur