STATE of Missouri, Respondent,

v.

Stanley HALL, Appellant.

No. 79106.

Supreme Court of Missouri,
En Banc.

Oct. 21, 1997.

Rehearing Denied Nov. 25, 1997.

Joseph L. Green, St. Charles, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cassandra K. Dolgin, Asst. Atty. Gen., Jefferson City, for Respondent.

WHITE, Judge.

A jury convicted defendant Stanley Hall of murder in the first degree, kidnapping, robbery in the first degree, and two counts of armed criminal action. The jury recommended a sentence of death. The trial court followed the recommendation. This Court has exclusive jurisdiction over the appeal. *Mo. Const. art. V, section 3.* We affirm the judgment.

## I. FACTS

This Court reviews the facts in the light most favorable to the verdict. *State v. Shurn,* 866 S.W.2d 447, 455 (Mo. banc 1993).

On the evening of January 15, 1994, Stanley Hall and Rance Burton borrowed a car and drove to the South County Shopping Center in St. Louis, Missouri. They were searching for a vehicle to steal. Hall and Burton got out of their car and approached Barbara Jo Wood's car as she pulled into the parking lot. They forced her at gunpoint to the passenger side and then drove her in her car to the McKinley Bridge.

Wood was forced out of the car, and there was a struggle on the bridge. At some point she was wounded—witnesses in a passing car saw her bleeding. Burton got back in Wood's car and drove away. Wood, pleading for her life, was still holding on to Hall as he tried to lift her over the bridge railing. He eventually succeeded, and Wood fell ninety feet to the river.

Meanwhile, the two witnesses in the car had notified the Venice, Illinois police department. The police arrived and captured Hall moments after he pushed Wood off the bridge. The icy condition of the river impeded search and rescue attempts.

Both witnesses identified Hall as the man they had seen struggling with Wood. After waiving his *Miranda*[1] rights, Hall identified Barbara Jo Wood from a picture as the woman he had forced over the guardrail. Seven-and-a-half months later, the lower portion of a torso matching Wood's physical description was found in the Mississippi River.

## II. PRETRIAL MOTIONS

### A. Motion to Enforce Plea Agreement

On May 10, 1994, Hall entered a plea of not guilty to murder in the first degree, kidnapping, robbery in the first degree, and three[2] counts of armed criminal action. On March 15, 1996, three days before Hall's trial was set to begin, Hall filed a "Motion to Enforce the Negotiated Plea Agreement" seeking to enter a plea of guilty in exchange for a life sentence. Hall alleged that the State had negotiated a plea agreement with him, that he had completed the conditions required of him, and that the State was refusing to honor the agreement. Hall maintained that the terms of the agreement were that the State would recommend a life sentence on the following conditions: (1) that Hall provide complete and truthful information about the crime and all those involved, specifically Rance Burton, (2) that he pass a lie detector test, and (3) that the State independently corroborate his information about Burton.

In support of his allegations, Hall offered his meeting with St. Louis County police officers in November 1995. The record reflects that the court approved transportation for such a meeting. Hall claimed that this meeting was pursuant to the plea agreement, and that he told the police everything he knew and took a lie detector test. Hall conceded in his motion that the results from that test were inconclusive, but submitted that he passed a second test that he arranged with a retired police officer. Hall did not produce any written agreement with the State. The trial court overruled the motion without a hearing. Hall appeals, seeking specific performance of the alleged promise—a life sentence.

There is no absolute right to have a guilty plea accepted by the trial court, even when the State and the defendant have reached an agreement and have presented it to the court in writing. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971); *Rule 24.02(d)(2).* "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *Mabry v. Johnson,* 467 U.S. 504, 507, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984). If a trial court refuses to enforce an existing plea agreement, therefore, the defendant is not prejudiced. *See State v. Strauss,* 779 S.W.2d 591, 594 (Mo.App.1989). If the State receives a confession through promises of leniency, however, and then the State reneges, that confession cannot be used at trial. *State v. Hoopes,* 534 S.W.2d 26, 37 (Mo. banc 1976).

On March 7, 1994, a year and eight months before Hall gave his statement pursuant to the alleged plea agreement, he gave the St. Louis County police a complete confession. Hall gave a detailed account of his trip to the mall, the kidnapping of Barbara Jo Woods, and the theft of her car. He recounted how Woods was pleading for her life as he struggled with her on the bridge. He described how, first, she grabbed on to the car door; then she was shot; next she grabbed hold of Hall; and finally, she clung to the bridge itself as Hall struggled to lift her over the guardrail. Hall confessed that he was the one who pushed her until she finally went over the railing.

Hall alleges that in November 1995, he confessed again pursuant to the purported plea agreement. The motion to enforce the plea agreement does not allege that the first and second confessions differed in any respect, however. The motion does not summarize the second confession other than to

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The State later filed an amended indictment dropping one count of armed criminal action.

state that Hall gave the police "a complete and truthful account." Though Hall requested to make an offer of proof on other issues, he never offered to prove the contents of the second confession. Even if there had been a plea agreement, and the State breached it after obtaining a second confession, and Hall did pass a lie detector test, Hall's only relief would be the exclusion of the second confession.[3] *Id.* The trial court did not have before it any allegations or offers of proof regarding any information the State may have gained through the second confession. As it was not detrimental to Hall to repeat an earlier confession and the State did not unjustly benefit by hearing the confession a second time, the record supports the trial court's ruling.

### B. Motion to Provide Care for Dependents of Jurors

■ Hall claims that the trial court erred in overruling his pretrial motion requesting care for the dependents of those selected to serve on the jury. He argues that failing to provide such a service effectively and unconstitutionally prevents minorities and the poor from serving as jurors. This Court rejected this argument in *State v. Whitfield,* 837 S.W.2d 503, 510 (Mo. banc 1992), stating:

> While many Missourians—particularly the poor, minorities, and women—need child care, any disparate impact on minorities by the scarcity of child care is unintentional. Government as a whole, including the judiciary, faces severe constraints on resources. The decision not to provide child care is a rational decision, facially neutral with regard to race and gender. As there is no intention to discriminate, the disproportionate impact on minorities and women is not sufficient to violate the equal protection clause of the Fourteenth Amendment, nor Article I, Section 2 of the Missouri Constitution.... Likewise, poverty is not a suspect class requiring strict scrutiny....
>
> Unfortunately, familial obligations prevent individuals from serving on juries.... Solutions to these problems are not, however, within this Court's jurisdiction, but rather

lie within the jurisdiction of those bodies with budgetary authority.

(citations omitted). The trial court did not err in overruling the motion.

### III. JURY SELECTION

#### A. Voir Dire Questions

■ Hall contends that the trial court erred in sustaining the State's objection to using the definition of first-degree murder during voir dire. Hall's counsel wanted to ask the members of the venirepanel if they could recommend a sentence of life imprisonment for a defendant who had "deliberated" and "coolly reflected" before committing a murder. The trial court ruled that the question was improper in voir dire, as it is the role of the court to instruct the persons who eventually serve on the jury as to the legal definitions regarding intent. The trial court then instructed defense counsel to limit this line of questioning to whether the veniremembers could consider the full range of punishment for first-degree murder authorized by law—life imprisonment without parole and the death penalty.

■ A trial court's ruling on whether to allow a voir dire question will be reversed only for abuse of discretion. *State v. Storey,* 901 S.W.2d 886, 892 (Mo. banc 1995). During voir dire, neither side may tell the panel what law will be applied in the case. *State v. Brown,* 902 S.W.2d 278, 286 (Mo. banc 1995). Voir dire is not the proper arena for the legal definitions that appear in jury instructions as the venirepanel is not the jury, nor does it have evidence before it. The trial court correctly sustained the State's objection.

### B. State's Motions to Remove for Cause

■ Hall claims that the trial court erred in sustaining the State's motion to remove Zereta Washington and Joann Kurland from the venirepanel. Cause for removal exists if a prospective juror's views on capital punishment would "prevent or substantially impair the performance of [that person's] duties as a juror in accordance with [the jury] instructions and [the juror's] oath." *Wainwright v. Witt,* 469 U.S. 412, 424, 105

---

**3.** The State did not introduce the second confession at trial.

S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980)). A prospective juror's qualifications are not conclusively determined by any single response, but from the entire voir dire examination. *State v. Kreutzer*, 928 S.W.2d 854, 866 (Mo. banc 1996); *Brown*, 902 S.W.2d at 285. As the trial court has the benefit of evaluating firsthand the demeanor and responses of each veniremember as the voir dire progresses, the trial court's ruling on whether a veniremember is committed to follow the law will not be disturbed absent a finding of abuse of discretion. *Wainwright*, 469 U.S. at 424–26, 105 S.Ct. at 852–54; *Kreutzer*, 928 S.W.2d at 866.

#### 1. Veniremember Zereta Washington

Hall insists that the trial court erred in removing Veniremember Washington as she told the court that she could follow the law and consider both life imprisonment and the death penalty. A review of the entire voir dire, however, reveals that Washington also stated, "I just wouldn't feel comfortable taking someone else's life in my hands. I just couldn't do it." She then answered seven follow-up questions to the same effect. Hall's argument is conclusional, out of context, and fails to demonstrate that the court abused its discretion.

#### 2. Veniremember Joann Kurland

Hall did not include in his motion for new trial his contention that Veniremember Kurland was wrongly removed. As he failed to preserve the claim, this Court reviews her removal for plain error. *State v. Harris*, 870 S.W.2d 798, 806 (Mo. banc 1994). To receive plain error relief, the appellant must demonstrate that "the action of the trial court was not only erroneous, but that the error so substantially impacted upon his rights that manifest injustice or a miscarriage of justice will result if the error is left uncorrected."

*State v. Hornbuckle*, 769 S.W.2d 89, 92–93 (Mo. banc 1989).

The only argument that Hall makes is that Kurland twice said that she could consider the death penalty. Eleven times Kurland expressed that she would have problems considering it. There was no error.

### C. Hall's Motions to Remove for Cause

Hall asserts that he was unconstitutionally forced to use four [4] of his nine peremptory strikes on veniremembers that should have been removed for cause. *Section 494.480.4* [5] is controlling:

> The qualifications of a juror on the panel from which peremptory challenges by the defense are made shall not constitute a ground for the granting of a motion for new trial or the reversal of a conviction or sentence unless such juror served upon the jury at the defendant's trial and participated in the verdict rendered against the defendant.

Hall does not contend that any of the persons that served on the jury were unqualified, only that the veniremembers against which he used his strikes were unqualified. Peremptory strikes are granted by statute, not the constitution. *State v. Gray*, 887 S.W.2d 369, 383 (Mo. banc 1994). Hall was afforded all of the protection the statute provides. He does not present grounds for relief. *State v. Richardson*, 923 S.W.2d 301, 310 (Mo. banc 1996).

### D. *Batson* [6] Challenges

Hall next argues that the trial court erred in overruling his timely *Batson* challenge to the State's use of peremptory strikes against Vandaris Simpson and Vergia Dunbar, two of the four African–Americans on the forty-two-member venire panel. No African–Americans were selected to serve on the jury.

In response to a *Batson* challenge, the State must present a reasonably specific and clear, racially-neutral explana-

---

4. Hall's brief alleges that he was forced to waste five strikes against veniremembers that should have been removed for cause, but the record reveals that Hall never made a motion to remove Veniremember David Reincke from the panel.

5. All statutory references are to RSMo 1994.

6. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

tion for the peremptory strike. *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992). Once a prosecutor articulates a facially valid reason for the strike, the burden shifts to the defendant to demonstrate that the strike was nonetheless racially motivated. *Id.* If the trial court determines that the strike was properly used, that ruling will not be overturned on appeal absent a finding of clear error. *Gray*, 887 S.W.2d at 384. A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *State v. Antwine*, 743 S.W.2d 51, 66 (Mo. banc 1987).

### 1. Veniremember Vandaris Simpson

In response to the *Batson* challenge, the State offered that it struck Simpson because of his answers concerning the death penalty and the State's burden of proof and because of his behavior, including an incident between Simpson and the bailiff.

■ The State originally moved to strike Veniremember Simpson for cause because of his views on the death penalty. Simpson said that it would be difficult for him to vote for the death penalty as he had problems with any kind of corporal punishment, even the physical discipline of his son. Going on to compare the death penalty to abortion, Simpson stated: "So in that same vane taking a life is taking a life. You know, I would have a problem. I think I would not be honest with the Court if I didn't express my opinion on that." The trial court ruled that the defense later rehabilitated Simpson, however, and overruled the State's motion to strike for cause.

■ The justification for a peremptory strike need not rise to the level of a justification for a challenge for cause. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. A prosecutor's perception of the venireperson can be based on past experience, "hunches," or "horse sense," and still survive *Batson* if based on a racially-neutral factor. *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992). Striking a veniremember for his qualms over the death penalty is not suspect

on its face. *State v. Pullen*, 843 S.W.2d 360, 363 (Mo. banc 1992).

The record also reflects Simpson's tendency to hold the State to a higher burden of proof than "beyond a reasonable doubt." He repeatedly referred to elements he would expect the State to prove "overwhelming[ly] beyond a shadow of a doubt." Striking a juror for his admission that he would hold the State to a higher burden of proof than that imposed by law is a facially valid, racially-neutral justification for a peremptory strike. Though Hall argued that Veniremember Virginia Kimler used the same language and was not struck, a review of her responses refutes his claim.

Additionally, the record demonstrates Simpson's disrespect towards the court and its officers. When the bailiff told Simpson during a recess that he did not have enough time to find a fast-food restaurant, Simpson responded "What are they going to do? They will wait for me." Also, the prosecutor stated that he saw Simpson shaking his head when a defense objection was overruled. And when the prosecutor questioned Simpson directly on voir dire, at one point Hall's counsel objected and Simpson stated to the court that he agreed with the objection. Simpson's lack of respect for the court is a facially valid factor.

■ On a *Batson* challenge, the trial court must determine from the totality of the circumstances whether the prosecutor's explanations are merely excuses for improper discrimination. *Parker*, 836 S.W.2d at 934. The trial court found the State's reasons to be racially-neutral. Hall did not present any similarly situated white jurors. The trial court ruled that Hall did not meet his burden in proving that the State's justifications were pretextual notwithstanding their facial validity. The record supports the court's ruling.

### 2. Veniremember Vergia Dunbar

■ The prosecutor stated for the trial court that he used a peremptory strike on Veniremember Dunbar because he perceived her to have a preference for life imprisonment without parole over the death penalty. He also reminded the court that he had made

a record during voir dire that he had seen her sleeping. The prosecutor also offered Dunbar's profession as a reason to strike—she was a retired social worker. Again, past experience and hunches are legitimate grounds for a peremptory strike. *Kempker*, 824 S.W.2d at 911. On their faces, these reasons are racially-neutral.

Defense counsel argued that these reasons were merely a subterfuge concealing racial bias. Hall's counsel claimed that he and his interns saw white veniremembers sleeping, he did not say who or how many, who were not struck. He did not allege that were sleeping *and* preferred the sentence of life imprisonment, however. Therefore, these unidentified veniremembers were not similarly situated.

The court reviewed its notes and confirmed that a record had been made on the sleeping and that it, too, had noted that Dunbar appeared to prefer life imprisonment without parole over the death penalty. The trial court did not clearly err in finding the prosecutor's justifications to be plausible and in finding that Hall did not meet his burden in proving that those justifications masked any racial motivation for striking Dunbar from the venirepanel.

## IV. REASONABLE DOUBT INSTRUCTIONS

In both the guilt and penalty phases, over Hall's objection, the trial court used the following standard language to instruct the jury on reasonable doubt:

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt.

*MAI-CR 3d* 302.04. Hall complains that this language undermines the standard of "beyond a reasonable doubt." This Court has consistently upheld this language and Hall offers no convincing reason to reexamine this issue. *See State v. Debler*, 856 S.W.2d 641, 652 (Mo. banc 1993).

7. *Rule 24.02.(d)(5)* sheds light on the lack of relevance and reliability of the defendant's intentions prior to making a plea: "[A]n offer to plead guilty to the crime charged or of any other crime,

## V. PENALTY PHASE

### A. Mitigating Circumstances

In the penalty phase, "the trier shall consider all evidence which it finds to be in aggravation or mitigation of punishment." *Section 565.032.1(2)*. The trial court sustained the State's motions in limine, ruling that Hall could not present as mitigating evidence his participation in plea negotiations or his polygraph tests. The court also ruled that Hall's psychological expert could not testify as to the details of the police reports concerning the investigation of Rance Burton's involvement in the murder. "[Al]though it is 'desirable for the jury to have as much information before it as possible when it makes the sentencing decision,' evidence introduced in mitigation must be relevant to 'the defendant's character, prior record, or the circumstances of his offense.' " *State v. Schneider*, 736 S.W.2d 392, 396 (Mo. banc 1987) (quoting *Gregg v. Georgia*, 428 U.S. 153, 204, 96 S.Ct. 2909, 2939–40, 49 L.Ed.2d 859 (1976); *Lockett v. Ohio*, 438 U.S. 586, 604 n. 12, 98 S.Ct. 2954, 2964–65 n. 12, 57 L.Ed.2d 973 (1978)); *See Section 557.036.1*. Rulings on relevance by the trial court will be reversed only upon a showing of abuse of discretion. *Schneider*, 736 S.W.2d at 397.

### 1. Plea Negotiations

The court ruled before trial that evidence of the alleged plea negotiations could not be introduced. During the penalty phase Hall sought to introduce Hall's willingness to plead guilty as a mitigating circumstance in that it demonstrated an acceptance of responsibility and cooperation with the police. The court reaffirmed its prior ruling. It did not abuse its discretion in doing so. The record conclusively shows that Hall's final decision was to plead not guilty.[7] Moreover, the jury did hear evidence that Hall cooperated with the police and accepted responsibility, namely, that he confessed to pushing Barbara Jo Wood off the bridge.

or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any . . . criminal proceeding against the person who made the plea or offer."

### 2. Polygraph Test

Hall also sought to introduce as a mitigating factor that he passed a polygraph test. The court reaffirmed its pretrial ruling sustaining the State's motion in limine. The results of polygraph tests are not admissible evidence. *State v. Woods,* 639 S.W.2d 818, 820 (Mo. banc 1982). It is also improper to introduce whether or not a polygraph test has been taken even if the results are not offered into evidence. *Id.* The trial court did not err in sustaining the State's motion in limine.

### 3. Police Reports

Dr. Engum testified for Hall regarding his psychological profile. During redirect examination, Dr. Engum began referring to information that he had read in police reports about Rance Burton. The State objected and the court sustained the objection. Hall made an offer of proof in which Dr. Engum testified that he had read the following in the reports: that the blood found on the bridge railing was consistent with someone being shot; that Wood's car was found in flames while Hall was in prison; an African-American was seen running from the burning car; and that when Burton was questioned by the police after the car was found, he smelled of gas and smoke, and admitted to having fired a gun in the past week.

The court had previously sustained the State's motion in limine to exclude evidence relating to whether or not Burton had been charged, tried, and convicted. The trial court did allow Dr. Engum to testify, however, that after examining Hall and reading the police reports, it was his opinion that it had been Burton who had shot Woods. When Hall's counsel attempted to elicit the details of the reports through Dr. Engum, the State objected. Hall responded that he was offering the information to prove the statutory mitigating circumstances that he acted under extreme duress or under the substantial domination of another person, and that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. *Section 565.032.3(5),(6).*

Dr. Engum was offered as a psychological expert. He testified that he believed the above mitigating circumstances to be true. The trial court did not abuse its discretion. The details of the police investigation of Burton were irrelevant to Hall's emotional state at the time of the murder, the area of Dr. Engum's expertise.

### B. Motion for Mistrial

On cross-examination of Dr. Engum, the State asked him how many times he had testified in a capital trial in Missouri. Then the following exchange took place:

A: It could be four ... I can think of Robert Hampton, Antonio Richardson, and gentleman by the name of Brooks.

Q: Thomas Brooks?

A: Thomas Brooks, yes.

Q: Killed Cassidy Center?

A: Yes.

Hall objected and moved for a mistrial. He argued that the reference to the Brooks trial was unfairly prejudicial as it involved the murder of a young child and had received extensive press coverage. The court sustained the objection but overruled the motion for mistrial, finding no prejudice.

Granting a mistrial is a drastic remedy that should be used only when necessary to cure grievous prejudice. *State v. Beal,* 470 S.W.2d 509, 516 (Mo. banc 1971). The decision to overrule a motion for mistrial will not be disturbed absent a finding that the trial court abused its discretion, as "by virtue of having had the opportunity to observe the incident precipitating the request for mistrial, the trial court is in a better position than an appellate court to determine the prejudicial effect, if any, that the incident had on the jury." *State v. Anderson,* 698 S.W.2d 849, 852–53 (Mo. banc 1985). The trial court sustained the objection and Dr. Engum volunteered no additional names of the victims or defendants from his previous trials. Hall did not suffer grievous harm by this isolated remark in the penalty phase. There was no abuse of discretion.

## C. Closing Argument

Hall implores this Court to review the trial court's adverse rulings on his objections during closing argument and reverse his sentence. When the trial court allows argument over defense counsel's objection, the rulings are reversible only for abuse of discretion where the argument was "plainly unwarranted." *State v. Weaver*, 912 S.W.2d 499, 512 (Mo. banc 1995).

Where there is no objection or request for relief during argument, the trial court's options are narrowed to "uninvited interference with summation and a corresponding increase of error by such intervention." *State v. Clemmons*, 753 S.W.2d 901, 908 (Mo. banc 1988). Consequently, a conviction will be reversed for improper argument on plain error review only if it is established that the comments had a decisive effect on the outcome of the trial, amounting to manifest injustice. *Id.*

### 1.

Hall objected to the prosecutor sharing with the jury, "When I was a young boy, I had a puppy and his name was Beauregard. He was about this long." The Court overruled Hall's objection. Though the relevance of this statement is questionable, parties have wide latitude in arguing during the penalty phase of a first-degree murder case. *State v. Shurn*, 866 S.W.2d 447, 463 (Mo. banc 1993). It cannot be said the trial court abused its discretion in overruling this prefatory language.

Hall did not object to the subsequent argument. Therefore, the following story to which he now objects will be reviewed for plain error. The prosecutor continued:

> Beauregard came from an animal shelter, and he was a wonderful animal. He would follow you everywhere. He would stay on a little leash. He would come and he would wag his tail when you got home, pant and jump on you, and I found out Beauregard had distemper, a disease that affects him, and the vet called me, I had to look up a veterinarian. The veterinarian seemed like he was ten feet tall, and the veterinarian said Beauregard had distem-

per. He will suffer brain damage. He may live through this, but he will never be the same. The right thing to do is have him put to sleep, and as a young child, I was—it was a tremendous decision, but there was only one right thing to do. You are faced with the tremendous decision, but there is only one right thing to do, and that man, this crime deserves the death penalty.

This Court rebukes the prosecutor's shameless ploy to tug at the heart strings of the jurors with a story about himself as a child faced with the knowledge that if he kept his playful puppy alive, the puppy he had saved from an animal shelter, the disease spreading through its little body would induce permanent brain damage and possibly death. Further, this Court's ruling in no way condones the illustration the State blatantly drew before the jury, comparing and contrasting the decision to end the life of a child's beloved pet with the decision to sentence to death a repeat offender the jury had just convicted for murder in the first degree. "It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be based on reason rather than caprice or emotion." *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204–05, 51 L.Ed.2d 393 (1977).

Upon careful review of the record, however, we find that the sentence was not influenced by caprice or emotion. The disturbing nature and the extensive amount of the evidence in this case, particularly Hall's detailed confession, provided a sufficient foundation for a death sentence recommendation based on reason. The jury found six aggravating factors, each of which this Court finds to be sufficiently supported by the evidence. *Infra* part VII. Although the puppy argument is problematic, it cannot be said that it had a decisive effect on the trial. Hall has not met his burden of proving manifest injustice.

### 2.

Next, Hall appeals the adverse ruling to his objection after the prosecutor stated that Barbara Jo Wood "was out on that bridge because of [Hall].... He is responsi-

ble for what he did to her. She did not have a lawyer on that bridge asking for mercy from twelve people." Defense counsel approached the bench and argued that the State was implying that it was unjust for Hall to be represented by counsel, a right guaranteed him by the constitution. After the court overruled the objection, the prosecutor continued, "It was just the two of them. There was no lawyer to represent Barbara. Barbara Wood asked for mercy." Again, defense counsel objected, and his objection was overruled.

A similar contentions was made in *Antwine v. State*, 791 S.W.2d 403, 410 (Mo. banc 1990), on an ineffective assistance of counsel claim. This Court then expressed the conclusion we reach again today:

> the prosecutor's statement does not seek to punish movant for exercising his right to a trial by jury. Instead, the prosecutor's statement, read in context, highlights the nature and seriousness of the crime and movant's disregard for the law. The statement cannot be reasonably read to portray movant's exercise of his right to trial as an aggravating circumstance.

■ We review for plain error the additional comment made by the prosecutor about which Hall now complains for the first time, "There was no jury of twelve people who took an oath to be fair to decide her fate." We find no manifest injustice.

**3.**

■ Hall also challenges the ruling allowing the following argument over his objections:

> [PROSECUTOR]: It is not easy to stand up here and ask you for [the death penalty]. Not every murder is a murder First Degree case. Not every murder First Degree case meets—
>
> [DEFENSE COUNSEL]: I object to this. I think it is arguing other cases which are not relevant to this, to Stanley Hall.
>
> THE COURT: The objection is overruled.
>
> [PROSECUTOR]: Not every murder First Degree case is a case that meets the legal requirements for the death penalty.

■ It is not error for the trial court to allow the prosecutor to say that it was a difficult decision to seek the death penalty. *Mease*, 842 S.W.2d at 109. This line of argument does not necessarily presume knowledge of facts outside the record. *Id.* The objection was properly overruled.

■ On appeal, for the first time, Hall argues that by making the above statement, the prosecutor personally vouched for the appropriateness of the death penalty. Such argument is permissible. *Id.* There is no error, plain or otherwise.

### D. Instructions

#### 1. Submission of "Monetary Value" and Robbery Factors

The court submitted to the jury the statutory aggravating factor that the murder was committed "for the purpose of receiving money or any other thing of monetary value from the victim of the murder." *Section 565.032.2(4)*. The court also submitted the factor that the murder was committed during the perpetration of the felony of robbery. *Section 565.032.2(11)*. Hall contends for the first time on appeal that the submission of both factors is unconstitutional, artificially inflating the circumstances of the crime. This Court has repeatedly rejected this argument, upholding the constitutionality of *Section 565.032*. *State v. Brown*, 902 S.W.2d 278, 293 (Mo. banc 1995); *State v. Wise*, 879 S.W.2d 494, 521 (Mo. banc 1994); *State v. Ramsey*, 864 S.W.2d 320, 337 (Mo. banc 1993). Hall does not present a persuasive reason to reexamine the issue. We find no error.

#### 2. Submission of "Depravity of Mind" Factor

Hall also challenges for the first time on appeal the "depravity of mind" factor. *Section 565.032.2(7)*. The court submitted to the jury:

> Whether the murder of Barbara Wood involved depravity of mind and whether, as a result thereof, the murder was outrageously and wantonly vile, horrible, and inhuman. You can make a determination of depravity of mind only if you find:

1. That the defendant's selection of the person he killed was random and without regard to the victim's identity and that defendant's killing of Barbara Wood thereby exhibited a callous disregard for the sanctity of all human life.

■ Hall argues that for crimes where the defendant has not acted alone, the instruction "must make clear that a finding of depravity of mind must be premised upon the acts and 'intent' of the defendant, not those of any other person," relying on the language of *MAI–CR 3d 313.40* n. 7(B). Hall's brief omits the language immediately preceding the phrase that he borrowed: "If depravity of mind is being submitted where the defendant acted with or aided another in the killing, these paragraphs *may* be modified accordingly. Any such modification must make clear ..." *Id.* (emphasis added). It is not mandatory that the instruction be modified. Moreover, the evidence was that Hall was alone with Wood on the Bridge when he pushed her over. No error occurred.

■ Hall also asserts that it was manifestly unjust to instruct on the "depravity of mind" factor without reference to torture. The Notes on Use for *MAI–CR 3d 313.40* expressly permits "depravity of mind" to be submitted together with torture, or by itself, as long it is accompanied by a phrase such as the one set out above regarding randomness and the callous disregard for human life. *MAI–CR 3d 313.40* n. 7(B)(8). No error occurred.

In another related point, Hall claims that he had *no notice* that the "random" and "callous disregard for human life" limiting language would be offered. This Court has rejected this argument, holding that it is sufficient notice that the State makes known before trial that it will rely on *Section 565.032.2(7)*. *State ex rel. Dally v. Elliston*, 811 S.W.2d 371, 374 (Mo. banc 1991). It is presumed that counsel and the trial court are aware of the factor's limitations and the requirement of *MAI–CR 3d 313.40* that the factor be submitted with an accompanying definition. There is no manifest injustice.

Additionally, Hall makes a constitutional challenge to the "depravity of mind" factor. This Court has repeatedly held when the factor is submitted together with a limiting instruction, the jurors receive sufficient guidance and the instruction is not unconstitutionally vague. *State v. Tokar*, 918 S.W.2d 753 (Mo. banc 1996); *Mease*, 842 S.W.2d at 113; *Sidebottom v. State*, 781 S.W.2d 791, 799 (Mo. banc 1989).

## VI. CONSTITUTIONAL CHALLENGE

Hall also challenges the constitutionality of the statutory scheme governing the death penalty. He contends that it affords unrestricted discretion to the State as to whether to seek the death penalty, that it lacks provisions for meaningful proportionality review, and that no legitimate state interest exists to justify such a scheme. This Court has repeatedly rejected identical claims. *See State v. Smith*, 944 S.W.2d 901, 923 (Mo. banc 1997); *State v. Brown*, 902 S.W.2d 278, 291 (Mo. banc 1995); *State v. Chambers*, 891 S.W.2d 93, 113 (Mo. banc 1994); *State v. Parker*, 886 S.W.2d 908, 933 (Mo. banc 1994). Hall does not offer a convincing argument for reexamination.

## VII. INDEPENDENT STATUTORY REVIEW

*Section 565.035.3* requires this Court to determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection 2 of section 565.032 and any other circumstance found;

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both [sic] the crime, the strength of the evidence and the defendant.

The jury found that the following six aggravating circumstances existed in the murder of Barbara Jo Wood: (1) Hall was convicted of assault in the first degree on September 1, 1987 in the circuit court of

St. Louis City, Missouri; (2) Hall was convicted of assault in the second degree on September 1, 1987 in the circuit court of St. Louis City, Missouri; (3) Hall murdered Barbara Jo Wood for the purpose of receiving something of monetary value; (4) the murder involved depravity of mind as it was "random and without regard to the victim's identity and that defendant's killing of Barbara Wood thereby exhibited a callous disregard for the sanctity of all human life"; (5) the murder was committed while Hall was knowingly aiding or encouraging others in the perpetration of a robbery; and (6) the murder was committed while Hall was knowingly aiding or encouraging others in the perpetration of a kidnapping. *Section 565.032.2(1), (4), (7), (11)*.

This Court finds that the evidence supports the finding of one statutory circumstance as required by *Section 565.030.4(1)*, and supports the other aggravating circumstances found.

 Considering the crime, the strength of the evidence, and the defendant, this Court finds that the sentence is proportionate to cases where the sentencer found beyond a reasonable doubt any one of the above aggravating circumstances. *State v. Skillicorn*, 944 S.W.2d 877 (Mo. banc 1997) (robbery, kidnapping); *State v. Smith*, 944 S.W.2d 901 (Mo. banc 1997) (pecuniary gain); *State v. Basile*, 942 S.W.2d 342 (Mo. banc 1997) (pecuniary gain); *State v. Roll*, 942 S.W.2d 370 (Mo. banc 1997) (robbery); *State v. Smulls*, 935 S.W.2d 9 (Mo. banc 1996) (pecuniary gain); *State v. Taylor*, 929 S.W.2d 209 (Mo. banc 1996) (robbery, kidnapping); *State v. Copeland*, 928 S.W.2d 828 (Mo. banc 1996) (pecuniary gain); *State v. Richardson*, 923 S.W.2d 301 (Mo. banc 1996) (robbery); *State v. Tokar*, 918 S.W.2d 753 (Mo. banc 1996) (depravity of mind).

### VIII. CONCLUSION

For all of the foregoing reasons, the judgment is affirmed.

All concur.