**STATE of Missouri, Respondent,**

v.

**Ronnie REEDER, Appellant.**

**No. ED 84507.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 28, 2005.

Case Transferred to Supreme Court
Aug. 19, 2006.

Case Retransferred to Court of
Appeals Nov. 20, 2005.

Original Opinion Reinstated
Feb. 15, 2006.

that the order for discovery was overbroad.

N. Scott Rosenblum, Clayton, MO, for appellant.

Deborah Daniels, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Presiding Judge.

Ronnie Reeder ("Defendant") appeals from the trial court's judgment entered in the Circuit Court of the City of St. Louis upon his conviction by a jury of three counts of statutory rape in the first degree and one count of attempted child molestation. Defendant contends that the trial court erred in: (1) restricting Defendant's use of the victims' prior false allegations; and (2) improperly joining the charges against Defendant into a single indictment and denying Defendant's Motion to Sever. We affirm.

## Statement of the Facts and Proceedings Below

Viewed in the light most favorable to the verdict, the evidence adduced at trial established that, in November of 1999, Defendant lived sporadically at 2017 Agnes in the City of St. Louis with his sister, Theresa, Theresa's two children and Tanya Wright, Defendant's niece by another sister. Sometime prior to Thanksgiving, Defendant entered the basement where Tanya slept, shook her arm to wake her, picked her up underneath her arms, placed her on a dresser, pulled her legs apart and forced his penis into her vagina. Tanya was thirteen years-old.

Tanya attempted to push Defendant off of her and threatened to go upstairs and tell someone. Defendant informed her that no one was home and warned that it would just hurt a little because it always hurts the first time. Tanya alleged that penetration lasted somewhere between one and two minutes, but she could not say if he ejaculated. The next day, Tanya told her grandmother what had occurred. In response, Tanya's grandmother, Defendant's mother, warned Tanya not to tell anyone and assured Tanya that she would take care of the situation.

On New Years Eve 2001, Misty Owens, then thirteen years-old, spent the night with Lisa Webb, another niece of Defendant's, and Lisa Webb's sister, at Lisa's house at 1420 St. Louis Avenue. The girls drank wine that they found and when one of the girls vomited, Misty agreed to go next door to Lisa's grandmother's home to borrow shampoo and conditioner. After approximately fifteen to twenty minutes Misty returned and told Lisa that she and Defendant had sex on the couch.

Misty returned to spend the night at Lisa's house on the weekend of February 2–3, 2002. Defendant stopped by and found Lisa and Misty watching a movie.

Defendant asked Lisa for cigarettes and Lisa left the living room to find them. Meanwhile, Defendant sat next to Misty on the couch and penetrated her vagina with his fingers. That night, Lisa and Misty slept in separate beds in the same room. Misty awoke to find Defendant on top of her. Defendant kissed and fondled Misty and had intercourse with her.

Defendant was indicted on four counts of statutory rape in the first degree, three counts of statutory sodomy in the first degree, one count of the class B felony of child molestation in the first degree and one count of the class C misdemeanor of assault in the first degree. Defendant filed a Motion to Sever. Specifically, Defendant requested one trial on counts relating to Misty Owens, one trial on the statutory rape count relating to Tanya Wright and one trial on the assault charge as it related to a third cousin and victim. The trial court denied Defendant's Motion to Sever the charges related to sexual acts with Tanya Wright and Misty Owens and reserved ruling regarding the assault charge against the third victim. Ultimately, the State filed an order of *nolle prosequi* on the assault charge. Defendant was tried before a jury of his peers.

The State presented the testimony of four witnesses at trial, including Tanya and Misty. During cross-examination, defense counsel sought to establish through extrinsic evidence that Tanya and Misty engaged in a pattern of false allegations to the police or the Division of Family Services ("DFS") whenever an authority figure angered them. The State objected and, after a lengthy discussion on the record, but outside of the presence of the jury, the trial court decided to allow questions regarding whether the witnesses made accusations against family members in the past, but limited the testimony to false allegations of sexual misconduct.

The trial court specifically denied defense counsel the opportunity to cross-examine the witnesses regarding any non-sexual prior allegations that occurred after the Fall of 2000.

The State called Detective Janet McKern from the Sex Crimes Unit of the St. Louis City Police Department to testify. Detective McKern testified that Misty's mother brought Misty to the Sex Crime Unit on February 6, 2002 to report that Misty had been raped by a family friend. Detective McKern interviewed Misty regarding her sexual encounters with Defendant on December 31, 2001 and February 2, 2002. On cross-examination, Detective McKern admitted that lab reports disclosed no seminal fluid on the shorts Misty claims she wore during intercourse.

Defendant called his mother and his sister to testify in his defense. Defendant's sister, Tina Marie Pulley, testified that when her daughter, Tanya, was mad at her, she would call the authorities. Specifically, Pulley testified that Tanya became angry when Pulley decided to move out of the neighborhood and contacted the police to accuse Pulley of beating her and having drugs in the house. Pulley attempted to testify that Tanya faked numerous pregnancies and once called "Children and Family Services" and made false allegations against Pulley, but the trial court excluded this testimony.

Pulley explained that Tanya and her cousins often made allegations against people in positions of authority. When Pulley and her sister had a problem with boys loitering around their front porch looking for Tanya, her cousins and her friends, they enlisted Defendant to "run the boys off" several times a day. Pulley testified that the fact that Defendant consistently forced the boys to leave angered the girls and in response "they'd lie on him." Pul-

ley likewise testified that Tanya and her cousins previously accused several men with whom Pulley and her sister were in relationships with of raping them because the girls disliked the fact that these men were extremely strict.

At the close of all the evidence, the trial court dismissed one count of statutory rape and two counts of statutory sodomy. Further, the State amended the child molestation charge to attempted child molestation. Accordingly, the court submitted three counts of statutory rape, one count of statutory sodomy and one count of attempted child molestation. Two counts of statutory rape and one count of attempted child molestation involved Misty Owens and one count of statutory rape involved Tanya Wright.

The jury found Defendant guilty of: (1) two counts of statutory rape in the first degree with respect to Misty Owens occurring on December 31, 2001 and the weekend of February 2–3, 2002; (2) attempted child molestation in the first degree with respect to Misty Owens on February 2–3, 2002; and (3) statutory rape in the first degree with respect to Tanya Wright occurring in November, 1999. The trial court sentenced Defendant to ten years each on the two statutory rape counts to run concurrently with each other and seven years on the attempted child molestation count, concurrent to the ten years on the statutory rape counts. The court also sentenced Defendant to fifteen years on the third count of statutory rape to be served consecutive to the other sentences for a total of twenty-five years. This appeal followed.

### Discussion

■ In his first point on appeal, Defendant contends that the trial court erred when it restricted his use of the victims' prior false allegations. Specifically, Defen-

dant argues that he suffered a deprivation of his constitutional right to present a defense as a result of the trial court's prohibition against the use of extrinsic evidence generally and false, non-sexual allegations that occurred after Fall of 2000.

As a preliminary matter, we note that Defendant did not include any claim of error related to this issue in his Motion for New Trial and therefore this issue is not properly preserved for appellate review. Mo.R.Crim.P. 29.11. Where an appellant fails to properly preserve an issue for appeal, appellate review is discretionary and only for plain error. *State v. Presberry*, 128 S.W.3d 80, 85 (Mo.App. E.D.2003). To warrant relief under this standard, appellant must establish a manifest injustice or a miscarriage of justice. *State v. Dudley*, 51 S.W.3d 44, 53 (Mo.App. W.D.2001).

Plain error review is used sparingly and is limited to error that is "evident, obvious and clear." *State v. Santillan*, 1 S.W.3d 572, 578 (Mo.App. E.D.1999). We will only grant relief under the plain error standard when alleged errors "so substantially affect a defendant's rights that a manifest injustice or a miscarriage of justice results if left uncorrected." *Presberry*, 128 S.W.3d at 85. The defendant bears the burden of proving a manifest injustice or miscarriage of justice. *State v. Louis*, 103 S.W.3d 861, 864 (Mo. App. E.D.2003). Because this is a direct criminal appeal, we note that plain error cannot serve as the basis for granting Defendant a new trial, as requested, unless we find that the alleged error was outcome determinative. *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002).

Defendant alleges that he suffered a deprivation of his constitutional rights when, during his cross-examination of Tanya, defense counsel sought to introduce extrinsic evidence to establish that Tanya made false allegations to the police or DFS when an authority figure angered her. Defendant contends that although the trial court permitted some questions regarding whether the Tanya made accusations against family members in the past, the trial court refused to allow testimony regarding whether those allegations were true or false, unless the alleged false allegations involved sexual misconduct. Specifically, the trial court discussed the issue with counsel as follows:

> THE COURT: ... [Y]ou may explore the relationships within the family and you may inquire about ... whether this witness made certain accusations or whether she did certain things in response to direction from a family member, but understand, [defense counsel], you're going to be bound by her answer, because I'm not going to allow you to bring in a bunch of collateral testimony on issues that are totally unrelated to her and the defendant.
>
> Now, you're entitled to bring in character testimony, reputation for truth and veracity testimony, but I'm not going to sit here and have a bunch of family members come in and say, "Yeah, she called DFS on me because I told her to take out a nose ring." That's collateral.
>
> [DEFENSE COUNSEL]: Isn't that evidence of her character?
>
> THE COURT: Character evidence is the opinion of the person and the reputation of the person for truth and veracity, not specific evidence—not some laundry list of specific incidents that has nothing to do with the defendant or any offense on trial.
>
> Now, that's my understanding, so you may cross-examine this witness and you may ask her about whether she's made accusations in the past against family members, *but I'm not going to entertain*

*testimony about whether those accusations are true or false, unless they're accusations of sexual misconduct.*

THE STATE: And, Your Honor, I would ask that those questions be limited in time to the period of time in which she first alleged that there was sexual contact, to the period of time that she actually disclosed it to authorities.

THE COURT: I agree.[1]

(emphasis added.)

Defendant asserts that this case is governed by *State v. Long*, 140 S.W.3d 27 (Mo. banc 2004), decided while this case was pending on appeal. In *Long*, a victim alleged that the defendant beat and sexually assaulted her. There was no physical evidence linking the defendant to the alleged sexual assault. The trial court prohibited the defendant from introducing extrinsic evidence to establish that the victim made prior false allegations against other individuals. The defendant appealed alleging that the excluded evidence was central to his defense.

Acknowledging the existing evidentiary rule that prior acts may not be proven by extrinsic evidence, the Court nevertheless concluded that "[w]here ... a witness' credibility is a key factor in determining guilt or acquittal, excluding extrinsic evidence of the witnesses' prior false allegations deprives the fact-finder of evidence that is highly relevant to a crucial issue directly in controversy; the credibility of the witness." *Long*, 140 S.W.3d at 30–31. Accordingly, the Supreme Court reversed and remanded for a new trial, holding that "excluding evidence of prior false allegations was prejudicial because [the defendant] was deprived of a full opportunity to present his defense that the witness was fabricating the present allegations against

him." *Id.* at 32. Rejecting the notion that, in order to be admissible, the extrinsic evidence must relate to a prior, false allegation of another rape or sexual assault, the Supreme Court clarified that, "[t]he relevance of the prior false allegation is thus derived primarily from the fact that the allegation was false and not entirely from the subject matter of the prior false allegation." *Id.* at 31.

■ As an initial matter, we determine whether the new evidentiary rule announced in *Long* is retrospective or prospective in application. *State v. Walker*, 616 S.W.2d 48, 49 (Mo. banc 1981). In *Walker*, the Supreme Court articulated the standard for determining whether a decision creating a new rule applies retrospectively or prospectively, when it considered whether *State v. Biddle*, 599 S.W.2d 182 (Mo. banc 1980), handed down during the pendency of the *Walker* defendant's appeal, which rendered polygraph examinations inadmissible in criminal trials, applied retroactively or prospectively. Acknowledging that *Biddle* changed the law in Missouri, the Court stated that where "the Court fails to indicate in the decision creating the new rule whether that rule is to be applied retrospectively or prospectively, then this determination hinges on whether the new rule of law is procedural or substantive." *Walker*, 616 S.W.2d at 49.

Furthermore, the Court held that if the new rule is substantive, it applies both retrospectively and prospectively. *Id.* By contrast, if the new rule is procedural, its effect is prospective only. *Id.* Because rules of evidence are procedural in nature and apply prospectively, the Court ultimately held that the rule created in *Biddle* warranted only prospective application.

---

1. Ultimately, the court determined that defense counsel could not cross-examine the witnesses regarding any non-sexual prior allegations that occurred after the Fall of 2000.

*Walker,* 616 S.W.2d at 49; *see also State v. Reasonover,* 714 S.W.2d 706, 720 (Mo.App. E.D.1986) (rule in subsequent Supreme Court decision which found post-hypnotic testimony to be inadmissible was a procedural rule dealing with the admissibility of evidence and therefore applied prospectively.)

In the *Long* decision, as in *Biddle,* the Supreme Court did not state whether the new rule should apply retrospectively. We thus determine whether the new rule articulated in *Long* is procedural or substantive. Because the new rule governs the admissibility of evidence, it is, as the Court held in *Walker,* procedural. Accordingly, it appears that we are required to apply *Long* prospectively only. Because the trial court properly applied the rule of evidence existing at the time of trial, the trial court did not err. Point denied.

In his second point, Defendant contends that the trial court abused its discretion in failing to sever counts I, III and VII from the count VIII because the counts were joined improperly, thus, severance was mandatory. Essentially, Defendant asserts that the trial court abused its discretion in joining and then refusing to sever these counts because the offenses do not share common tactics, nor were they the same transaction, occurrence or time frame. In response, the State asserts that: (1) the offenses against Tanya Wright and Misty Owens were sufficiently similar in character to support joinder; and (2) Defendant failed to make a particularized showing of prejudice from the charges being tried together.

 Joinder and severance are two distinct issues for appellate review. *State v. Warren,* 141 S.W.3d 478, 486 (Mo.App. E.D.2004). Joinder addresses the issue of what crimes can be charged in a single proceeding. *Id.* Severance, on the other hand, presupposes proper joinder and

leaves the determination of whether prejudice may result if charges are joined together to the trial court's discretion. *Id.*

 Rule 23.05 states that joinder is proper where the manner in which the crimes were committed:

> are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

Because "[l]iberal joinder of criminal charges is favored in the interest of judicial economy[,]" joinder is appropriate when any of these criteria exist. *State v. Bechhold,* 65 S.W.3d 591, 595 (Mo.App. S.D.2002). We examine only the State's evidence to determine if there has been a misjoinder of offenses. *Id.*

 Defendant first argues that there is nothing similar about the tactics used in the sexual crimes against Tanya and the sexual crimes against Misty and that the only commonality is that the crimes involving both Defendants are sexual in nature. Specifically, Defendant contends that the sexual encounters were not similar because: (1) there were two separate victims, only one of which was a relative; (2) the encounter with his cousin was forceful while the encounter with the other victim was consensual; (3) the encounters took place years apart; and (4) the encounters involved "very different types of sex."

 Contrary to Defendant's insinuation otherwise, in order for joinder to be proper, the tactics used to commit the crimes need not be identical; they need only be of the "same or similar character." *State v. Smith,* 886 S.W.2d 194, 197 (Mo. App. E.D.1994). Some of the factors we consider to determine if a defendant's tac-

tics are similar in character include: (1) similarity in the type of offenses; (2) similarity in the victims sex and age group; (3) commonality of the location where the offenses took place; and (4) closeness in time between the crimes. *State v. Hyman*, 37 S.W.3d 384, 393 (Mo.App. W.D. 2001). Here, the State proved that the charged counts are similar in character in that on two separate occasions Defendant awoke a thirteen year-old girl in his home, or a home where he periodically lived, in order to have sexual intercourse with her. In view of the foregoing, the trial court did not err in joining the counts against Defendant in a single indictment.

 Having found joinder proper in this case, we next address the trial court's denial of Defendant's Motion to Sever. Severance presupposes proper joinder and leaves to the trial court the determination of whether prejudice may result if charges properly joined are tried together. *Warren*, 141 S.W.3d at 486. In making this determination, the trial court considers, *inter alia*, the number of offenses and whether the complexity of the evidence enables the jury to distinguish the evidence and apply the law to each separate offense. *State v. Vinson*, 834 S.W.2d 824, 827 (Mo.App. E.D.1992). We review the trial court's determination for abuse of discretion.

Defendant contends that the trial court abused its discretion in denying his Motion to Sever. Defendant asserts that the jury improperly considered evidence of the charge involving Tanya as evidence of the charges involving Misty, and vise versa, despite the fact that these charges involved very different factual scenarios. Essentially, Defendant posits that the jury's exposure to information relating to alleged crimes involving the other victim was prejudicial. We disagree.

When evidence relating to each offense is distinct and uncomplicated, and the jury is properly instructed to return separate verdicts for each offense charged, there is no abuse of discretion in refusing to sever. *State v. Tripp*, 939 S.W.2d 513, 519 (Mo. App. S.D.1997). Here, both Tanya and Misty testified regarding their respective sexual contact with Defendant. Review of the transcript reveals that each witness's testimony is distinct and uncomplicated. The record also indicates that the trial court properly instructed the jury to consider each count separately and that, in light of such instruction, the jury acquitted Defendant of statutory sodomy while convicting him on other counts.[2] A jury's decision to acquit a defendant of one count while convicting him of other counts is indicative of the jury's ability to distinguish evidence and apply the law to each count separately. *State v. Howton*, 890 S.W.2d 740, 745 (Mo.App. W.D.1995). Accordingly, the trial court did not abuse its discretion in refusing to sever the counts against Defendant and Defendant did not suffer any prejudice as a result of the trial court's ruling. Defendant's second point is denied.

### Conclusion

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR., J., Concurs.

GLENN A. NORTON, J., Concurs.

---

**2.** Instruction 10 provided: "The defendant is charged with a separate offense in each of the five counts submitted to you. Each count must be considered separately. You should return a separate verdict for each count and you can return only one verdict for each count."