

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | |
|---|---|
| STATE OF MISSOURI, | ) No. ED100079 |
| | ) |
| Plaintiff/Respondent, | ) Appeal from the Circuit Court |
| | ) of the City of St. Louis |
| v. | ) |
| | ) Hon. Rex M. Burlison |
| VINCENT E. HOOD, | ) |
| | ) |
| Defendant/Appellant. | ) Filed: October 14, 2014 |

### Introduction

Vincent E. Hood (Appellant) appeals from the trial court's judgment entered upon a jury

verdict convicting him of one count of forcible sodomy in violation of Section 566.060[1]; two

counts of misdemeanor third-degree domestic assault in violation of Section 565.074; and one

count of misdemeanor resisting arrest in violation of Section 575.150, and sentencing him to 15

years on the forcible sodomy charge to run consecutively to one year on each of the three

misdemeanor charges running concurrently with each other. We affirm.

### Factual and Procedural Background

At the time of the incidents relevant to this case, Victim was in a relationship with

Appellant. On July 3, 2011, when Victim was 31 weeks pregnant with Appellant's child, they

were at Appellant's stepfather's home in a two-family flat on Tholozan. Appellant's mother

---

[1] All statutory references are to RSMo. 2006, unless otherwise indicated.

lived in the other home in the two-family flat. They got into an argument, and Victim decided to leave by taxicab. When the taxicab arrived, Appellant tried to prevent her from leaving. He grabbed her by the hair, threw her to the ground, and punched and kicked her in the head. Officer Maurice Moore saw Appellant dragging Victim down the street. As Officer Moore approached, he saw Victim had injuries to her face, scratches, and swelling on her forehead. Victim told Officer Moore Appellant had kicked her in the stomach and punched her in the head. Appellant said, "F**k her," and when asked about their unborn child, Appellant responded, "F**k him too." Officer Moore arrested Appellant. Victim was transported to the hospital and treated for pain and bruising.

Several months later, after their first child was born, Victim was still in a relationship with Appellant, although she characterized it as "on and off." On November 20, 2011, Victim was pregnant, and had stopped by the Appellant's mother's home to drop off their son with Appellant. Appellant became angry and refused to watch the child, but Appellant's mother said that she would. As Victim left and walked down the street to the bus stop, Appellant again tried to prevent Victim from leaving by running up behind her and pushing her to the ground. He started punching her, kicking her, and pulling her hair. Appellant's mother intervened and pulled Appellant off. Victim ran to a nearby convenience store where she called the police and was joined by Appellant's mother and sister. Appellant came inside the store, purchased a soda, and threw it on Victim. Officer Paul Simmons arrived and saw Appellant running across the street followed by Victim, who was waving her arms to the officer and yelling that Appellant had assaulted her. Officer Simmons shouted for Appellant to stop, but Appellant continued running. Officer Simmons and his partner pursued Appellant and tackled him to the ground. Appellant attempted to resist being handcuffed, but the officers eventually succeeded. Victim told the

2

officers what had happened, which was corroborated by Appellant's mother. Victim suffered a bump on the back of her head.

On March 6, 2012, Victim dropped their child off at Appellant's mother's home, where Appellant was staying. On March 7, 2012, when Victim went to pick up the child, Appellant started asking her questions about her current pregnancy and suggestively started touching her, kissed her on her neck, and bit her. Victim told him to stop and attempted to leave. Appellant slammed the door on Victim's hand and pushed her to the ground. Appellant pinned Victim's arms behind her back, forced her into his mother's bedroom, choked her, pushed her onto the bed, pulled down her leggings and underpants, and penetrated her vaginally with his fingers and his penis. After Appellant finished, he said something to the effect of "Now go tell your boyfriend that, bitch."

Victim ran out of the house naked from the waist down to a neighbor's house across the street and called the police. The police arrived and Victim told them what happened. Victim was taken to a hospital where a rape kit was performed. Hospital staff observed swelling to Victim's right wrist and arm and a scratch on her neck. Victim's vaginal area was bruised, sore and swollen in a manner inconsistent with a consensual sexual act. Vaginal swabs revealed Appellant's DNA.

Victim told Detective Constance Hoffman of the St. Louis City Police Department domestic violence unit that Appellant had started kissing on her, asked her who she had been with since he had been in jail, and then accused her of having been impregnated by another man. Victim told Detective Hoffman Appellant then slammed her hand in the door as she tried to leave, choked her, put his fingers in her vagina, and raped her.

3

For the actions Appellant committed on these three occasions, he was indicted for forcible rape (Count I), forcible sodomy (Count II), second-degree domestic assault (Count III), third-degree domestic assault (Count IV), third-degree domestic assault (Count V), resisting arrest (Count VI), and third-degree domestic assault (Count VII). Prior to trial, Appellant filed a Motion to Dismiss Improperly Joined Counts, or in the Alternative, for Severance of Offenses. The trial court denied the motion.

After a jury trial, the jury found Appellant guilty of forcible sodomy in Count II, the lesser included charge of misdemeanor third-degree domestic assault in Count III, misdemeanor resisting arrest in Count VI, and misdemeanor third-degree domestic assault in Count VII. The jury found Appellant not guilty of Counts IV and V. The jury was unable to reach a verdict on the forcible rape charge in Count I, which was remanded to Division 16 for further proceedings on April 18, 2013. The trial court sentenced Appellant to 15 years in prison on the forcible sodomy charge to run consecutively to one year in the St. Louis City Medium Security Institution on each of the three misdemeanor counts, which were to run concurrently with each other. This appeal follows.

## Point I

In his first point, Appellant claims the trial court erred and abused its discretion in denying his Motion to Dismiss Improperly Joined Counts, or in the Alternative, for Severance of Offenses and in proceeding to trial on all seven counts of the indictment because Rule 23.05[2] and Section 545.140 do not permit joinder of the offenses charged in Counts I-IV with the offenses charged in Counts V-VII.

---

[2] All rule references are to Mo. R. Crim. P. 2012, unless otherwise indicated.

4

Appellate review of claims of improper joinder and failure to sever involves a two-step analysis. State v. Chambers, 234 S.W.3d 501, 508 (Mo.App. E.D. 2007). First, we must determine whether joinder was proper as a matter of law. Id. If joinder was proper, we then must determine whether the court abused its discretion in denying the defendant's motion to sever the offenses. Id. Joinder addresses the issue of what crimes can be charged in a single proceeding. State v. Reeder, 182 S.W.3d 569, 576 (Mo.App. E.D. 2005). Severance, however, presupposes proper joinder and leaves the determination of whether prejudice may result if charges are joined together to the trial court's discretion. Id. The issue of whether joinder is proper is a question of law, and this Court only examines the State's evidence in making the determination. State v. Warren, 141 S.W.3d 478, 486 (Mo.App. E.D. 2004).

On May 14, 2012, Appellant was indicted with seven different offenses. Count I charged that on March 7, 2012, Appellant committed the unclassified felony of forcible rape in violation of Section 566.030, in that he knowingly had sexual intercourse with Victim by the use of forcible compulsion. Count II charged that on March 7, 2012, Appellant committed the unclassified felony of forcible sodomy in violation of Section 566.060, in that he had deviate sexual intercourse with Victim by the use of forcible compulsion. Count III charged that Appellant and Victim had been in a romantic relationship and that on March 7, 2012, Appellant committed the Class C felony of domestic assault in the second degree in violation of Section 565.073, in that he attempted to cause physical injury to Victim by choking her. Count IV charged that Appellant and Victim had been in a romantic relationship and that on March 7, 2012, Appellant committed the class A misdemeanor of domestic assault in the second degree in violation of Section 565.074, in that he attempted to cause physical injury to Victim by slamming her hand in a door. Count V charged that Appellant and Victim had been in a

romantic relationship and that on November 20, 2011, Appellant committed the class A misdemeanor of domestic assault in the third degree in violation of Section 565.074, in that he attempted to cause physical injury to Victim by kicking her. Count VI charged that on November 20, 2011, Appellant committed the class A misdemeanor of resisting arrest in violation of Section 575.150, in that he used or threatened to use force against a police officer in order to prevent a police officer from arresting him for domestic assault. Count VII charged that Appellant and Victim had been in a romantic relationship and that on July 3, 2011, Appellant committed the class A misdemeanor of domestic assault in the third degree in violation of Section 565.074, in that he attempted to cause physical injury to Victim by striking her.

Rule 23.05 states that "[a]ll offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts." Similarly, Section 545.140.2 provides in pertinent part that "two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Appellant maintains that when compared to the offenses charged in Counts I-IV, the offenses charged in Counts V-VII are not of the same or similar character, are not based on the same act or transaction, and are not based on two or more acts or transactions that are connected together or that constitute parts of a common scheme or plan. As such, claims Appellant, the offenses charged in Counts I-IV were improperly joined with the offenses charged in Counts V-VII and the trial court should have dismissed or severed Counts V-VII. We disagree.

6

The seven offenses charged arose from only three separate incidents involving Appellant committing domestic violence acts against the same victim, his girlfriend and the mother of his child, within the span of a year, to-wit: July 3, 2011, November 20, 2011, and March 6, 2012. In each incident, Appellant became angry with Victim and pursued her to commit the acts of domestic violence involving kicking and hitting, with the last one culminating in sexual violence. The first incident arose after Appellant and Victim were at Appellant's stepfather's house and the second two occurred during visits to Appellant's mother's house next door. As such, the offenses involve acts of a similar character, with the same motive, against the same victim, in common locations, and within a proximate time period.

In order for joinder to be proper, the tactics used to commit the crimes need not be identical; they need only be of the same or similar character. Reeder, 182 S.W.3d at 576. Some of the factors we consider to determine if a defendant's tactics are similar in character include: (1) similarity in the type of offenses; (2) similarity in the victims' sex and age group; (3) commonality of the location where the offenses took place; and (4) closeness in time between the crimes. Id. at 576-77. Here, as set out above, all of these elements are present. The similarity of the acts committed by Appellant against Victim overshadows any variance in their details. The distinctions Appellant points out are of little consequence in terms of the commonality of his crimes as charged in this case for purposes of proper joinder under Rule 23.05 and Section 545.140.2. Identical tactics are not required, and the mere existence of differences among the counts does not defeat joinder. State v. Love, 293 S.W.3d 471, 476 (Mo.App. E.D. 2009). Joinder was proper in this case.

Having found joinder proper, we next address the trial court's denial of Appellant's Motion to Sever. Severance presupposes proper joinder and leaves to the trial court the

7

determination of whether prejudice may result if charges properly joined are tried together.

Reeder, 182 S.W.3d at 577. We review the trial court's determination for abuse of discretion.

Id.

Rule 24.07 mandates that when a defendant is charged with more than one offense in the same indictment, the offenses shall be tried together unless the court orders an offense to be tried separately because three requirements are met: (1) a party files a written motion requesting a separate trial of the offense; (2) a party makes a particularized showing of substantial prejudice if the offense is not tried separately; and (3) the court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense. Similarly, Section 545.885 provides in relevant part:

> 1. Notwithstanding Missouri supreme court rule 24.07, whenever two or more offenses are jointly charged in an indictment or information, the court shall order both or all offenses to be tried together.
> 2. If it appears that a defendant or the state is substantially prejudiced by a joinder of the offenses for trial, upon a written motion of the defendant or the state and upon a particularized showing of substantial prejudice, the court may grant a severance of offenses or provide whatever relief justice requires. For purposes of this section, "substantial prejudice" shall mean a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imaginary, illusionary or nominal.

In determining whether actual prejudice exists when alleging an error with regard to the severance of charges, the court should consider, among other relevant factors, the number of offenses charged, the complexity of the evidence offered, and whether the trier of fact could realistically distinguish the evidence or apply the law to each offense. State v. Conley, 873 S.W.2d 233, 238 (Mo.banc 1994). The general allegation that the jury would likely consider evidence of guilt of one charge as evidence of guilt of another charge is not sufficient to show a particularized showing of substantial prejudice. Chambers, 234 S.W.3d at 509. Nor does the

8

mere fact that juries are apt to regard with a more jaundiced eye a person charged with two crimes than a person charged with one call for severance. Love, 293 S.W.3d at 477.

In this case, the evidence relating to each offense is uncomplicated and distinct. Appellant was only charged with seven offenses that occurred over three separate incidents, the evidence offered was not complex, and the jury could realistically distinguish the evidence and apply the law to each offense. Also, the jury was properly instructed to return separate verdicts for each offense charged. In fact, the jury only convicted Appellant of four of the seven offenses charged. A jury's decision to acquit a defendant of one count while convicting him of the other counts is indicative of the jury's ability to distinguish evidence and apply the law to each count separately. See Reeder, 182 S.W.3d at 577; Chambers, 234 S.W.3d at 509. Accordingly, Appellant has not made a particularized showing of how he was prejudiced by the failure to sever the charges against him in this case, and without such a showing, there can be no finding of an abuse of discretion. Chambers, 234 S.W.3d at 509. The trial court did not abuse its discretion in denying Appellant's motion to sever.

For the foregoing reasons, Point I is denied.

## Point II

In his second point, Appellant asserts the trial court abused its discretion in excluding the portions of Victim's medical records that showed she had chlamydia because it was relevant to show Victim's vaginal area was swollen due to the disease and not because Appellant raped and sodomized her.

A trial court has broad discretion to admit or exclude evidence at trial. State v. Taylor, 407 S.W.3d 153, 157 (Mo.App. E.D. 2013). The trial court's exercise of this discretion will not be disturbed unless it is clearly against the logic of the circumstances. Id. That discretion is

9

abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. Id. For evidentiary error to cause reversal, prejudice must be demonstrated. Id. Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial. Id.

Laura Allen (Allen), the nurse who performed the rape kit examination on Victim, testified at trial. On direct examination, she testified that Victim's vagina was swollen, and that it was uncommon to observe swelling in a sexually active woman following a consensual sexual act. On cross-examination, Allen conceded that consensual rough sex, prolonged sex, and an infection could also cause swelling.

At the conclusion of the State's case, it moved to admit Appellant's medical records into evidence. Appellant objected to the admission of Victim's medical records without including the portion of Exhibit 8 that indicated Victim had chlamydia. Appellant made an offer of proof by presenting the court with the relevant portion of Exhibit 8. The trial court accepted and denied Appellant's offer of proof as follows:

> Your offer of proof is accepted and denied. As we've discussed, I guess since last week on motions, the Court's position is that the defendant can raise all of the symptoms and -- that would normally be associated with a sexually transmitted disease, and relating those symptoms to the symptoms, or to the findings that were made in the emergency room. However, a post-determination that the defendant or that the victim suffered from the sexually transmitted disease that she evidently was unaware of, as least as to this testing, is more - - is more prejudicial than probative. The Court did not, at any point, deny the defendant the right to talk to either [Allen] or [Victim] about symptoms that are normally associated with sexually transmitted disease, but a diagnosis of that condition without further evidence, however it was tested in the testing process, or any other type of evidence that would support that statement in the record, makes the probative value less than the prejudicial value.

The trial court is in the best position to evaluate whether the potential prejudice of relevant evidence outweighs the relevance. State v. Kenley, 693 S.W.2d 79, 81 (Mo.banc 1985). It is vested with broad discretion in ruling questions of relevancy of evidence and, absent a clear

10

showing of abuse of that discretion, the appellate court should not interfere with the trial court's ruling. State v. Brown, 718 S.W.2d 493, 493-94 (Mo.banc 1986).

In the instant case, the trial court did not err in refusing to admit Exhibit 8 because it lacked probative value. First, Allen did not testify chlamydia, specifically, could cause vaginal swelling, or that the swelling she observed in Victim appeared to be the result of chlamydia. Likewise, Exhibit 8 was not probative as to whether Victim's chlamydia caused her vaginal swelling as opposed to the sodomy and alleged rape. Appellant's offer of proof with relation to Exhibit 8 suffers the same infirmity and failure.

Further, Appellant was not prejudiced by the exclusion of the evidence because there was substantial other evidence that Appellant sodomized Victim on the day in question, to-wit: Victim testified that Appellant slammed a door on her hand before pushing her to the ground, pinned her arms behind her back, forced her into the bedroom, bit her on the neck and choked her. Hospital staff observed swelling to Victim's right wrist and arm and a scratch on her neck. Victim testified Appellant pushed her onto the bed, removed her pants, and penetrated her vaginally with both his penis and his fingers. After the assault, Victim, without pants or underwear, ran across the street to a neighbor's house for help and to call police. The neighbor testified at trial that Victim had run to her house, screaming for help, naked from the waist down. Police were called and a report was made. At the hospital, a rape kit was performed on Victim, and the sperm and semen on the vaginal swabs revealed Appellant's DNA. Based on the weight of evidence presented, it is highly unlikely that the jury would have found Appellant not guilty had they been made aware that Victim was diagnosed with chlamydia at the time of the medical exam performed at the hospital after the attack.

11

For the foregoing reasons, we find the trial court did not abuse its discretion in excluding Exhibit 8 or any portion thereof.  Point II is denied.

<u>Conclusion</u>

The trial court's judgment is affirmed.

_____
Sherri B. Sullivan, P.J.


Mary K. Hoff, J., and
Philip M. Hess, J., concur.

12