

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED103418 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 1422-CR01649-01 |
| | ) | |
| JASON BROWNLEE, | ) | Honorable Steven R. Ohmer |
| | ) | |
| Appellant. | ) | Filed:  June 28, 2016 |

Jason Brownlee ("Defendant") appeals the judgment entered upon a jury verdict convicting him of one count of unlawful possession of a firearm pertaining to the possession of a .38 caliber revolver (".38 caliber revolver" or "revolver").  We affirm.

## I.    BACKGROUND

In addition to the above crime, Defendant was charged with unlawful use of a weapon and resisting a lawful stop.  A jury trial took place with respect to the three charges on June 29-30, 2015.  During the trial, the State and Defendant, through defense counsel, filed a joint memorandum stipulating Defendant was previously convicted of a felony on January 17, 2002.

### A.    Evidence Presented by the State at Trial

Viewed in the light most favorable to the verdict, the following evidence was presented by the State at Defendant's trial.  After conducting an investigation into information obtained from a confidential informant, City of St. Louis ("City") police officers determined a man named Charles Henderson was selling narcotics from 5115 Terry Avenue ("the residence").  Officers

obtained a search warrant for the residence, which they executed on May 2, 2014 with the assistance of a SWAT team.

The SWAT team approached the front of the residence and saw a man, later identified as Defendant, seated on the front porch. Officer Joshua Becherer, who was one of the members of the SWAT team, ordered Defendant to show his hands and to step down off the porch, but Defendant failed to comply with the officer's commands. Instead, Defendant stood up and clutched his waistband. Officer Becherer testified that based on his knowledge and experience, Defendant's action of clutching his waistband led the officer to believe Defendant was armed.

Defendant subsequently went inside the residence and closed and locked the door behind him. The SWAT team then used a battering ram to open the door, threw a flashbang device[1] inside the residence to divert any occupants away from the door, and entered the residence.

Once inside the residence, Officer Becherer saw Defendant in the living room standing in front of an entertainment center, facing away from the officer. Officer Becherer could see Defendant's arms and hands moving and shuffling about waist height in front of his body, but the officer could not see what Defendant was doing. Officer Becherer ordered Defendant to show his hands and move toward the officer, but Defendant again failed to comply with the officer's commands. Officer Becherer then approached Defendant from behind, grabbed him by the back near his shoulder, and forced him to the ground. Officer Becherer testified that as Defendant was falling down, Defendant extended his arm in front of his body and discarded a .38 caliber revolver, causing it to land on one of the shelves of the entertainment center. Defendant was subsequently handcuffed and arrested.

---

[1] Officer Becherer testified a flashbang device is a non-lethal, noise-diversion device which makes a loud bang and flash.

Police officers then removed the other people who were in the residence, apprehended and arrested Henderson, and searched the residence. Officers seized the revolver from the entertainment center which was discarded by Defendant, and later testing determined the revolver and its cartridges were functional.

Detective Daniel Chamblin testified that in addition to the .38 caliber revolver Defendant was ultimately charged with possessing, officers also found "lots of contraband" and another firearm in the residence. Specifically, Detective Chamblin testified he and his partner found "cocaine base, powder cocaine, crack cocaine," packaging material, and a scale in the living room; marijuana in the bathroom including in the toilet; and a .45 caliber handgun in the bedroom. Defense counsel did not object to any of the preceding testimony from Detective Chamblin.

During the presentation of the State's case, the prosecutor offered into evidence a number of pictures relating to the execution of the search warrant, including Exhibits 14-17. Exhibit 14 is a picture of marijuana, drugs, and a scale, Exhibit 15 is a picture of marijuana in a toilet, and Exhibits 16 and 17 are pictures of the .45 caliber handgun. Defendant objected to the admission of Exhibits 14-17 on the grounds they represented uncharged illegal conduct. The trial court overruled Defendant's objections, and Exhibits 14-17 were admitted into evidence. Nevertheless, during defense counsel's cross-examination of Detective Chamblin, counsel established the items shown in Exhibits 14-17 were not attributed to Defendant and that the drugs were specifically attributed to Henderson.

**B.     Evidence Presented by Defendant at Trial**

Defendant called one witness in his defense, Tranice Peete, who gave a version of the events on the day of the alleged offenses which was contrary to the State's evidence. Peete testified she was at the residence when the search warrant was executed and Defendant

3

immediately put his hands up when the SWAT team entered the house. Peete further testified officers proceeded to hit Defendant in the face with the butt of a gun, Defendant was not near the entertainment center, and Defendant did not have or throw a gun. In addition, Peete testified she never saw the .38 caliber revolver Defendant was charged with possessing.

On cross-examination, the prosecutor attempted to impeach Peete through the use of prior inconsistent statements she allegedly made to a defense investigator prior to trial. While Peete admitted to the prosecutor that she remembered talking to the defense investigator over the phone "back in March," she repeatedly denied and/or stated she did not remember the prosecutor's suggestions regarding the contents of the conversation.

## C. Relevant Procedural Posture

At the close of the State's evidence and at the close of all of the evidence, Defendant filed motions for judgment of acquittal, and the trial court denied both motions. After the prosecutor and Defendant gave their closing arguments,[2] the jury acquitted Defendant of the charges of unlawful use of a weapon and resisting a lawful stop but found him guilty of the charge of unlawful possession of a firearm.

Defendant then filed a motion for judgment of acquittal notwithstanding the verdict of the jury, or in the alternative, for a new trial ("post-trial motion"). Defendant's post-trial motion asserted there was insufficient evidence to support a conviction for unlawful possession of a firearm and the trial court erred in admitting Exhibits 14-17. The trial court denied Defendant's post-trial motion, entered a judgment in accordance with the jury's verdict convicting Defendant of unlawful possession of a firearm, and sentenced Defendant as a prior and persistent offender to fifteen years of imprisonment. Defendant appeals.

---

[2] Relevant portions of the prosecutor's closing argument are discussed below in Section II.B.

4

## II.    DISCUSSION

Defendant raises four points on appeal.  In his first point, Defendant contends there was insufficient evidence to support his conviction.  In his second point, Defendant asserts the trial court erred in failing to declare a mistrial sua sponte during the prosecutor's closing argument. And in his third and fourth points, Defendant argues the trial court erred in admitting Exhibits 14-17 into evidence.

### A.    Sufficiency of the Evidence

In Defendant's first point on appeal, he contends there was insufficient evidence to support his conviction for unlawful possession of a firearm.

Appellate review of a challenge to the sufficiency of the evidence supporting a criminal conviction is limited to a determination of "whether the [S]tate has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt."  *State v. Hosier*, 454 S.W.3d 883, 898 (Mo. banc 2015).  In making that determination, all evidence and inferences favorable to the State are accepted as true, and all contrary evidence and inferences are disregarded.  *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011).  In addition, great deference is given to the trier of fact, and an appellate court will not weigh the evidence anew.  *Id.*

Section 571.070.1 RSMo Supp. 2011[3] states in relevant part: "A person commits the crime of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and: (1) [s]uch person has been convicted of a felony under the laws of this state . . .."

In this case, Defendant's conviction for unlawful possession of a firearm pertains to his alleged possession of the .38 caliber revolver seized from the entertainment center of the

---

[3] All further references to section 571.070.1 are to RSMo Supp. 2011, which incorporates amendments through 2010.

residence. Defendant does not dispute he was a convicted felon within the meaning of section 571.070.1(1) when the .38 caliber revolver was seized.[4] Instead, Defendant only claims there was insufficient evidence from which a reasonable juror could have found, beyond a reasonable doubt, that he had possession of the .38 caliber revolver as required by the statute.

"Possession" is defined as "having actual or constructive possession of an object with knowledge of its presence." *State v. Ludemann*, 386 S.W.3d 882, 885 (Mo. App. S.D. 2012) (quoting section 556.061(22) RSMo Supp. 2014[5]). Moreover, a person has actual possession of an object, including a firearm, if he has the object on his person or within his easy reach and convenient control. *Ludemann*, 386 S.W.3d at 885-86 (citing section 556.061(22)).

Here, after the SWAT team arrived at the residence, Officer Becherer ordered Defendant to show his hands and to step down off the porch, but Defendant failed to comply with the officer's commands. Instead, Defendant stood up and clutched his waistband. Officer Becherer testified that based on his knowledge and experience, Defendant's action of clutching his waistband led the officer to believe Defendant was armed.

Defendant subsequently went inside the residence and closed and locked the door behind him. After Officer Becherer entered the residence with assistance from the rest of the SWAT team, he saw Defendant in the living room standing in front of an entertainment center, facing away from the officer. Officer Becherer could see Defendant's arms and hands moving and shuffling about waist height in front of his body, but the officer could not see what Defendant was doing. Officer Becherer ordered Defendant to show his hands and move toward the officer, but Defendant again failed to comply with the officer's commands. Officer Becherer then

---

[4] During Defendant's trial, the State and Defendant, through defense counsel, filed a joint memorandum stipulating Defendant was previously convicted of a felony on January 17, 2002.

[5] All further references to section 556.061(22) are to RSMo Supp. 2014, which incorporates amendments through 2013.

approached Defendant from behind, grabbed him by the back near his shoulder, and forced him to the ground. Officer Becherer testified that as Defendant was falling down, Defendant extended his arm in front of his body and discarded a .38 caliber revolver, causing it to land on one of the shelves of the entertainment center.

Viewing the preceding testimony and all inferences therefrom in the light most favorable to the State, which our standard of review requires us to do, *Nash*, 339 S.W.3d at 509, a reasonable juror could have found, (1) Defendant had the .38 caliber revolver on his person and within his easy reach and convenient control, i.e., that Defendant had actual possession of the firearm; and (2) Defendant had knowledge of the presence of the firearm. Accordingly, there was sufficient evidence from which a reasonable juror could have found, beyond a reasonable doubt, that Defendant had possession of the .38 caliber revolver within the meaning of section 571.070.1. *See Ludemann*, 386 S.W.3d at 885-86; section 556.061(22).

Defendant argues the evidence was insufficient to support the jury's finding that he had possession of the .38 caliber revolver because there were contrary evidence and inferences adduced at trial. In support of his argument, Defendant cites to evidence including testimony from Officer Becherer indicating the revolver was found situated "nicely" between papers on the entertainment center and testimony from Peete that she did not see Defendant with a gun. However, this argument and its supporting evidence ignores our standard of review, which requires us to disregard all evidence and inferences which are contrary to the verdict. *Nash*, 339 S.W.3d at 509. Similarly, "[t]he credibility and the effects of conflicts or inconsistencies in testimony are questions for the jury" and are beyond this Court's scope of review. *State v. Steed*, 455 S.W.3d 479, 484 (Mo. App. E.D. 2015) (quotations omitted).

Based on the law defining possession and our standard of review, the State presented sufficient evidence from which a reasonable juror could have found, beyond a reasonable doubt, that Defendant had possession of the .38 caliber revolver. Point one is denied.

**B.    The Trial Court's Failure to Declare a Mistrial Sua Sponte During the Prosecutor's Closing Argument**

In Defendant's second point on appeal, he claims the trial court erred in failing to declare a mistrial sua sponte during the prosecutor's closing argument, after the prosecutor repeatedly referred to the existence of a gun problem in the City, and the prosecutor repeatedly referred to Peete's alleged trial testimony concerning prior inconsistent statements she allegedly made to the defense investigator. Defendant concedes his claim is not preserved for review because defense counsel did not object to the portions of the prosecutor's closing argument at issue in this point and because he did not raise the claim in his post-trial motion. *See, e.g., State v. Shaffer*, 251 S.W.3d 356, 357 (Mo. App. S.D. 2008).

Pursuant to Rule 30.20,[6] our Court may review a defendant's unpreserved claim for plain error. *State v. McKay*, 411 S.W.3d 295, 304 (Mo. App. E.D. 2013). Under this standard of review, we will only grant a defendant relief if we find an error occurred and the error affected his rights so substantially that a manifest injustice or miscarriage of justice resulted. *Id.*; *State v. Brown*, 996 S.W.2d 719, 732 (Mo. App. W.D. 1999). Plain errors are those which are evident, obvious, and clear, and our Court determines whether such errors exist based on the circumstances of each case. *McKay*, 411 S.W.3d at 304-05. The defendant has the burden of demonstrating a manifest injustice or miscarriage of justice resulted from the trial court's alleged error. *Id.* at 304.

---

[6] All references to Rules are to Missouri Supreme Court Rules of Criminal Procedure (2015).

Counsel is permitted substantial latitude in closing argument, and an appellate court will rarely grant relief on a claim that the trial court plainly erred in failing to sua sponte take remedial action during oral argument. *State v. Plummer*, 860 S.W.2d 340, 349 (Mo. App. E.D. 1993). Where, as in this case, there is no objection or request for relief during closing argument, any action taken by the trial court is considered uninvited interference with summation and may itself be error. *State v. Hall*, 955 S.W.2d 198, 208 (Mo. banc 1997); *Plummer*, 860 S.W.2d at 349. Accordingly, a conviction will be reversed for improper closing argument on plain error review only if the defendant demonstrates the comments had a decisive effect on the outcome of the trial, amounting to a manifest injustice or miscarriage of justice. *Hall*, 955 S.W.2d at 208; *McKay*, 411 S.W.3d at 304; *Plummer*, 860 S.W.2d at 349.

1. **The Prosecutor's References to the Existence of a Gun Problem in the City**

In three separate instances during closing argument, the prosecutor referred to the existence of a gun problem in the City. First, the prosecutor stated, "Gun violence is an issue in this [C]ity. That's why we're here today." Later in closing argument, the prosecutor stated, ". . . [L]ike we said, this happened in the [C]ity of St. Louis. Gun violence is an issue in the [C]ity." Finally, the prosecutor stated, "Gun violence is a problem in the [C]ity whether you want to admit it or not."

Defendant asserts the preceding comments were impermissible because there was no evidence in the record that a gun problem actually existed in the City. For the reasons discussed below, we disagree.

It is improper for a prosecutor's closing argument to suggest personal danger to the jurors or their families if a defendant is acquitted or to suggest a defendant's criminal proclivities and the necessity for specifically deterring the defendant from future crimes. *State v. Hatcher*, 835 S.W.2d 340, 344 (Mo. App. W.D. 1992) (citing *State v. Raspberry*, 452 S.W.2d 169, 172 (Mo.

9

1970)).  However, a prosecutor is permitted to argue propositions including the prevalence of crime in the community and the personal safety of its residents, and such pleas may call upon common experience.  *State v. Preston*, 861 S.W.2d 627, 631 (Mo. App. E.D. 1993).  A prosecutor is also permitted to argue "the necessity of law enforcement to deter crime and the evils that may befall society if a jury fails its duty."  *Id.*

In this case, the prosecutor's comments referring to the existence of a gun problem in the City were within the parameters of permissible argument because they concerned the prevalence of crime in the community, the personal safety of its residents, the necessity of law enforcement to deter crime, and the evils that may befall society if the jury failed its duty.  *Id.*  The prosecutor's argument in this regard did not need to be supported by specific evidence in the record but permissibly called upon the juror's common experience.  *See id.*  Moreover, similar arguments have been found to be permissible by this Court and the Western District.  *See Preston*, 861 S.W.2d at 631-32 (holding a prosecutor's comments "[y]ou have to realize that drugs are out on the street [in] St. Louis" and "[w]e have a drug problem" were permissible in closing argument); *Hatcher*, 835 S.W.2d at 344 (holding a prosecutor's repeated references to the city having a drug problem were permissible in closing argument).  Accordingly, the trial court did not plainly err in failing to declare a mistrial sua sponte after the prosecutor referred to the existence of a gun problem in the City.

> **2.    The Prosecutor's References to Prior Inconsistent Statements Defense Witness Peete Allegedly Made to the Defense Investigator**

Defendant also maintains the trial court erred in failing to declare a mistrial sua sponte during the prosecutor's closing argument, after the prosecutor twice referred to Peete's alleged trial testimony concerning prior inconsistent statements she allegedly made to the defense investigator.  First, the prosecutor argued:

> And then I talked to [Peete] about her testimony – her – the statements she gave to the [D]efendant's investigator back in March. She said no, she never said – she never said anything about the flashbang. She said the [D]efendant came in – back in March she said the [D]efendant came in and said that the cops were around the block.

Later, the prosecutor argued, "[Peete] has nothing to gain. She came in here and her testimony was completely different from what she told the investigator back in March."

Defendant argues the preceding comments were improper because there was no evidence of what was actually said during the conversation between Peete and the defense investigator in March, and therefore, the prosecutor's argument went beyond the evidence presented. *See State v. Deck*, 303 S.W.3d 527, 543 (Mo. banc 2010) ("[t]he State has wide latitude in closing arguments, but closing arguments must not go beyond the evidence presented"). We agree. In this case, the investigator who was allegedly a party to the conversation with Peete was never called as a witness, and the prosecutor did not present an offer of proof as to the contents of the conversation. In addition, a review of Peete's testimony reveals that while she admitted to the prosecutor she remembered talking to the defense investigator over the phone "back in March," she repeatedly denied and/or stated she did not remember the prosecutor's suggestions regarding the contents of the conversation. Because the prosecutor's closing arguments regarding Peete's prior inconsistent statements she allegedly made to the defense investigator went beyond the evidence presented at trial, they were improper. *See id*.

Nevertheless, a conviction will be reversed for improper closing argument on plain error review only if the defendant demonstrates the comments had a decisive effect on the outcome of the trial, amounting to a manifest injustice or miscarriage of justice. *Hall*, 955 S.W.2d at 208; *McKay*, 411 S.W.3d at 304; *Plummer*, 860 S.W.2d at 349. In support of his claim that a manifest injustice or miscarriage of justice occurred as a result of the prosecutor's comments in this case, Defendant heavily relies on *Berger v. U.S.*, 295 U.S. 78 (1935).

11

In *Berger*, the defendant was convicted of conspiring with others to use counterfeit notes. *Id*. at 79-80. The defendant appealed his conviction, claiming the U.S. attorney who prosecuted the case committed misconduct during his cross-examination of witnesses and his argument to the jury. *See id*. at 80. Notably, defense counsel objected to some of the U.S. attorney's questions, insinuations, and misstatements, and the trial court sustained counsel's objections and instructed the jury to disregard them. *Id*. at 85. The U.S. Supreme Court found:

> [The U.S. attorney] was guilty of misstating the facts in his cross-examination of witnesses; of putting into the mouths of such witnesses things which they had not said; of suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered; of pretending to understand that a witness had said something which he had not said and persistently cross-examining the witness upon that basis; of assuming prejudicial facts not in evidence; of bullying and arguing with witnesses; and, in general, of conducting himself in a thoroughly indecorous and improper manner.

> . . .

> The [U.S.] attorney's argument to the jury was undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury.

*Id*. at 84, 85. The *Berger* Court held the defendant was prejudiced as a result of the U.S. attorney's repeated misconduct because, (1) the evidence of the defendant's guilt was weak in that it depended on the testimony of an accomplice with a long criminal record; and (2) the U.S. attorney's misconduct was not slight but "pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." *Id*. at 88-89. Further, the Court held the circumstances of the case "called for stern rebuke and repressive measures and, perhaps, if these were not successful, for the granting of a mistrial," reversed defendant's conviction, and granted him a new trial. *Id*. at 85, 89. In rendering its decision, the U.S. Supreme Court did not explicitly discuss the standard of review which governed the case, and similarly, did not find the U.S. attorney's actions amounted to a manifest injustice or miscarriage of justice. *See id*. at 79-89.

12

The circumstances of this case are distinguishable from those in *Berger* for several reasons. First, unlike in *Berger*, in this case there were no objections to the prosecutor's comments concerning Peete's alleged trial testimony, and therefore, in this case defense counsel completely failed to make the trial court aware of the prosecutor's alleged improper argument.[7] *See id*. at 85. Moreover, a review of the record reveals the prosecutor's comments in this case do not rise to the level of the U.S. attorney's improper argument and conduct in *Berger*. Among other reasons, we cannot find the prosecutor's argument in this case was "undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury." *See id*. at 85. Nor can we find the prosecutor's argument in this case was "pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." *See id*. at 89. Rather, although the prosecutor in this case improperly characterized Peete's testimony and went beyond the evidence in two instances, a review of the record reveals those instances were minimal in light of the entirety of the prosecutor's closing argument. In addition, unlike the evidence of the defendant's guilt in *Berger* which was weak and dependent on the testimony of an accomplice with a long criminal record, *see id.* at 88-89, Defendant's guilt in this case was strong and depended on the testimony of a police officer.

Finally, if not most importantly, it is undisputed that the standard of review which governs this point on appeal is plain error, under which a conviction will be reversed for improper closing argument only if the defendant demonstrates the prosecutor's comments amounted to a manifest injustice or miscarriage of justice. *Hall*, 955 S.W.2d at 208; *McKay*, 411 S.W.3d at 304; *Plummer*, 860 S.W.2d at 349. In contrast, in *Berger* the standard of review was not explicitly mentioned, and there was no language suggesting reversal was based upon a

---

[7] As stated previously, in addition to failing to lodge any objections to the complained-of portions of the prosecutor's closing argument, defense counsel also did not raise the issue in his post-trial motion.

13

finding that the U.S. attorney's actions amounted to a manifest injustice or miscarriage of justice. *See Berger*, 295 U.S. at 79-89.

In sum, *Berger* is distinguishable from and inapplicable to this case. Moreover, we find Defendant has not demonstrated the prosecutor's comments concerning Peete's alleged trial testimony concerning prior inconsistent statements she allegedly made to the defense investigator had a decisive effect on the outcome of the trial, amounting to a manifest injustice or miscarriage of justice. Therefore, the trial court did not commit reversible error in failing to declare a mistrial sua sponte with respect to this portion of the prosecutor's argument. *See Hall*, 955 S.W.2d at 208; *McKay*, 411 S.W.3d at 304; *Plummer*, 860 S.W.2d at 349.

### 3. Conclusion as to Point Two

Based on the foregoing, the trial court did not plainly err in failing to declare a mistrial sua sponte during the prosecutor's closing argument. Point two is denied.

## C. The Trial Court's Admission of Exhibits 14-17

In Defendant's third and fourth points on appeal, he argues the trial court erred in admitting Exhibits 14-17 into evidence. Exhibit 14 is a picture of marijuana, drugs, and a scale, Exhibit 15 is a picture of marijuana in a toilet, and Exhibits 16 and 17 are pictures of the .45 caliber handgun. Defendant asserts the trial court committed reversible error in admitting Exhibits 14-17 because they constituted inadmissible evidence of uncharged offenses, in that Defendant was not charged with any drug offenses or with unlawfully possessing or using the .45 caliber handgun.

It is within a trial court's broad discretion to admit or exclude evidence at trial and an evidentiary ruling is reviewed for an abuse of discretion. *State v. Hood*, 451 S.W.3d 758, 765 (Mo. App. E.D. 2014). A trial court abuses its discretion when its decision "is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration."

14

*Id*. We will only reverse an evidentiary error if prejudice is demonstrated, i.e., if there is a reasonable probability the trial court's alleged error affected the outcome of the trial. *Id*. "Generally, prejudice does not exist when the objectionable evidence is merely cumulative of other evidence that was admitted without objection and that sufficiently establishes essentially the same facts." *State v. Kelly*, 367 S.W.3d 629, 630 (Mo. App. E.D. 2012) (quotations omitted).

In this case, even assuming arguendo that Exhibits 14-17 were erroneously admitted, Defendant has not demonstrated he was prejudiced as a result of their admission. During defense counsel's cross-examination of Detective Chamblin, counsel affirmatively established the items shown in Exhibits 14-17 were not attributed to Defendant and that the drugs were specifically attributed to Henderson. Accordingly, we find there is not a reasonable probability the trial court's alleged errors in admitting the exhibits affected the outcome of the trial.

Moreover, the drugs, drug paraphernalia, and .45 caliber handgun which were pictured in the exhibits were merely cumulative of other evidence admitted without objection and which sufficiently established essentially the same facts. Detective Chamblin testified that in addition to the .38 caliber revolver Defendant was ultimately charged with possessing, officers also found "lots of contraband" and another firearm in the residence. Specifically, Detective Chamblin testified he and his partner found "cocaine base, powder cocaine, crack cocaine," packaging material, and a scale in the living room; marijuana in the bathroom including in the toilet; and a .45 caliber handgun in the bedroom. Defense counsel did not object to any of the preceding testimony from Detective Chamblin.

Based on the foregoing, there is not a reasonable probability the trial court's admission of Exhibits 14-17 affected the outcome of the trial, and the objectionable evidence was merely cumulative of other evidence admitted without objection and which sufficiently established essentially the same facts. Accordingly, Defendant has not demonstrated he was prejudiced by

15

the admission of Exhibits 14-17[8] or that the trial court committed reversible error in admitting the exhibits. *Hood*, 451 S.W.3d at 765; *Kelly*, 367 S.W.3d at 630. Points three and four are denied.

### III. CONCLUSION

The trial court's judgment is affirmed.

_____
ROBERT M. CLAYTON III, Presiding Judge

Lawrence E. Mooney, J., and
James M. Dowd, J., concur.

---

[8] In support of his argument that admission of Exhibits 16 and 17, pictures of the .45 caliber handgun, were prejudicial, Defendant cites to *State v. Williams*, 543 S.W.2d 563 (Mo. App. 1976). In *Williams*, the appellate court reversed a defendant's conviction for carrying a concealed weapon where the trial court admitted a second weapon which was not connected to the defendant or the offense for which he was tried. *Id*. at 563-66. The Court held the trial court erred in admitting the second weapon "[g]iven the absence of any logical connection with the offense charged and the inherently prejudicial nature of the demonstrative evidence of the [ ] weapon." *Id*. at 566. As discussed above, in this case defense counsel affirmatively established the .45 caliber handgun pictured in Exhibits 16 and 17 was not attributed to Defendant, and the objectionable evidence was merely cumulative of other evidence admitted without objection and which sufficiently established essentially the same facts. Because neither of those circumstances was present in *Williams*, it is distinguishable from and inapplicable to this case. *See id*. at 563-66.

16